June Term,
1860.

Adler
v.
Mil.Pat.Brick
Man. Co. et al.

Adler, for himself and the other creditors, &c., vs. The Milwaukee Patent Brick Manufacturing Company and others.

The capital stock of a corporation, both that which has actually been paid and that which remains unpaid, is regarded in the law as a trust fund pledged for the payment of the debts of the corporation.

A judgment creditor of the corporation, after execution returned unsatisfied, may maintain an action in his own behalf and in behalf of such other creditors of the corporation as may elect to become parties thereto, against the corporation and its delinquent or withdrawing stockholders, and have a decree that an account of the assets and debts of the corporation be taken, and a receiver appointed, and that the stockholders and officers of the corporation pay in and account to the receiver for so much of the capital stock as will be sufficient to pay the debt of the plaintiff, and of such other creditors as may choose to join him and come in under the decree, and that the receiver apply the same in discharge of such debts.

An action for such relief should be brought in behalf of all the creditors who may desire to unite therein, that all may share alike in the funds realized by the proceeding.

In such actions, unless impracticable, *all* the stockholders must be made parties.

As against stockholders such an action may be maintained independently of any statutory provision therefor, even where the creditor's bill has been abolished.

Sections 18 and 19, chapter 148, R. S., 1858, govern the proceedings against the corporation itself, when a sequestration of its property and the appointment of a receiver are sought; and a receiver appointed under them in an action against the company alone, cannot maintain an action against a delinquent stockholder for the unpaid balance due on his subscription.

Sections 18 and 19, chapter 148, R. S., 1858, apply to corporations doing a general business of any kind except banking and insurance; while sections 21-32 apply only to moneyed and insurance corporations.

That part of said section 19, which directs that in a case arising under section 18, creditors of the corporation "shall be paid in the same order provided in the case of a voluntary dissolution of a corporation," must be understood as referring to the order which would be adopted by a court of equity, under the general rules governing the practice of such courts, in case of such voluntary dissolution, there being no statute in this state which prescribes such order.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint in this action (which was commenced in June, 1858), alleged that the *Milwaukee Patent Brick Manufacturing Company* was organized in 1855, under an act of the legislature; that the other defendants became subscribers to its capital stock in certain amounts; that the company went into business in 1855, and continued therein until June, 1857, when it became insolvent, having ceased its business and re-

linquished its organization; that on, &c., the plaintiff obtained a judgment in the county court of Milwaukee county against the company for $1,862 ; that an execution was issued thereon to the sheriff of said county, and returned wholly unsatisfied; that said company had no property whatever; that the co-defendants of the company had not paid more than ten per cent. of the capital stock subscribed by them respectively; that two of said co-defendants, and perhaps others of them, were insolvent; and that there were other creditors of the company beside the plaintiff, whose demands were unpaid ; wherefore the plaintiff prayed that an account might be taken of what was due from said company to all persons who might elect to come in as creditors thereof under the judgment in this action; that an account might also be taken of the amounts respectively paid by the several co-defendants of the company upon their subscriptions to its stock, and of the amounts yet unpaid thereon; that it might be ascertained who, if any, of said defendants were insolvent; that said co-defendants might be decreed to pay so much of the balance found unpaid on their respective stock subscriptions as would be sufficient to pay the debts of the company when so ascertained; and that a receiver might be appointed, &c. The defendants answered.

When the case came on for trial, the defendants moved to dismiss the complaint for want of jurisdiction, and because the complaint did not state facts sufficient to constitute a cause of action; and the court made an order dismissing the complaint, from which the plaintiff appealed.

*Smith & Salomon,* for appellant:

1. By the common law, without any statutory provisions to that effect, the stockholders of an incorporated company are liable to pay their subscriptions if such payment is necessary to discharge the debts of the company. A court of equity has power to compel such payment at the suit of one creditor on behalf of himself and all others who will come in. Angell & Ames on Corp., pp. 538–546; *Spear vs. Grant,* 16 Mass., 9 ; *Vose vs. Grant,* 15 id., 505, 521, *et seq.; Wood vs. Dummer,* 3 Mason, 308; *Slee vs. Bloom,* 19 John,, 456; *Briggs vs. ·Penniman,* 8 Cow., 387, 395–6 ; *Ward vs. Gris-*

*woldville Man. Co.*, 16 Conn., 593 ; *Mann vs. Pentz*, 3 Coms., 415 ; 1 Strobhart's Eq., 209, 229, 249, 255 ; 4 U. S. Dig., p. 425, §§ 83, 84, 85 ; 17 Ohio, 187.   2. This court has decided that no creditor's bill would lie since the repeal of the Revised Statutes of 1849.   But (1). This suit was brought before that repeal, and even if the complaint was in the nature of a creditor's bill, it was proper, under sec. 7, chap. 84, R. S., 1849.   (2). This complaint is not an ordinary creditor's bill.   It is an *original* action, brought to reach trust property, and to *sub-rogate* the creditors to the rights of the corporation. It does not seek to *collect debts* due to the corporation, but to *enforce contribution* from the stockholders.   See cases above cited, especially *Ward vs. Griswoldville Man. Co.* and *Mann vs. Pentz*.   3. If the court should hold, contrary to *Mann vs. Pentz*, that our remedy was under secs. 6 and 7, chap. 114, R. S., 1849, we insist that the complaint is good, under those sections, as a *petition*.   The corporation having no property, the liability of the stockholders is all that remains and all that the receiver could take.   *Judson vs. The Rossie Galena Company*, 9 Paige, 598 ; *Morgan vs. N. Y. & Albany R. R. Co.*, 10 id., 290.   4. The complaint is also authorized by sec. 21, chap. 54, and secs. 19 and 20, chap. 114, R. S., 1849.

*G. A. & J. C. Starkweather*, for respondents, contended that this action was in the nature of a creditor's bill, which was not admissible against a corporation under the Revised Statutes of 1849, (*Morgan vs. N. Y. & Alb. R. R. Co.*, 10 Paige, 290) ; and that the plaintiff should have brought his action under secs. 6 and 7, chap. 114, R. S., 1849, for a sequestration of the property of the company.

*Mat. H. Carpenter*, on the same side, also argued that this action could not be maintained against a corporation under the Revised Statutes of 1849.   In *Morgan vs. The N. Y. and Albany R. R. Co.*, it was held that the remedy by sequestration was exclusive of the ordinary remedy by creditor's bill, where the judgment debtor was a corporation. This was upon the principle that the law giving creditor's bills, and the provision exempting corporations from them, were side by side *in one revision of the statutes*, and the latter was in the nature of an exception.   *Ashley vs. Harrington*,

1 Chip. (Vt.), 348; *State vs. Rackley*, 2 Blackf., 249; *Peyton vs. Moseley*, 3 Mon., 77. The Revised Statutes themselves declaring that when the provisions of different statutes were in conflict, each should be in force with regard to its own subject matter, had the effect to make the law for sequestration an exception to the general law as to creditor's bills. If the court are of opinion that the sequestrating statute was not void for uncertainty, and because most of its manifestly intended provisions are omitted, then the principles of *Morgan vs. N. Y. and Albany R. R. Co.*, *supra*, are conclusive of the question. This is a creditor's action. See *Ogilvie vs. Knox Ins. Co.*, 22 Howard (U. S), 380. See also *Graham vs. La Crosse & Mil. R. R. Co.*, 10 Wis., 459.

November 19.    *By the Court,* DIXON, C. J. It would be much against reason and common justice, if the stockholders of an incorporated company, like the principal defendant in this action, after having paid in the amount of their stock subscriptions according to the requirements of its charter, should be permitted afterwards, and without first discharging the liabilities of such company to the extent of such subscriptions, to withdraw their stock and leave its creditors unsatisfied. It would be equally contrary to the plainest principles of law and equity, as well as common sense, after having subscribed the requisite amount of stock to give the corporation a legal existence, though the same should remain in whole or in part unpaid, and after having organized it, to allow them through their own or the willful neglect and dishonest practices of its officers, to refuse to pay in so much of such unpaid stock as may be necessary to discharge the fair and just debts due from the company, and which have been contracted on the foundation of such subscription and organization. The stockholders being in general free from personal responsibility, the capital stock constitutes the sole fund to which creditors look for the liquidation of their demands. It is the basis of the credit which is extended to the corporation by the public, and a substitute for the individual liability which exists in other cases. So far as creditors are concerned, it is regarded in the law as a trust fund, pledged for the

payment of the debts of the corporation. Until they are paid the stockholders are postponed; they are only entitled to that which remains after the claims of the creditors are extinguished. This is as true of the unpaid shares sub-scribed, or balances due thereon, as of the amount which has actually been paid in. Such unpaid shares or balances are as much a part of the capital stock as the sums which have already been realized thereon. Aside from the funds on hand, they often constitute the only resource of the com-pany. They are debts due to it, the payment of which can be enforced by its officers. The delinquent subscribers are its debtors, and the directors are clothed with authority to compel them to pay. When the company is indebted, and other means of meeting its liabilities are exhausted, the ex-ercise of this authority becomes a duty which they are un-der the highest moral obligation to perform. Creditors are supposed to have trusted as well to such unpaid subscrip-tions, and to the fair and faithful exercise of such compul-sory power, for their payment, as to the funds actually paid in; and when it becomes necessary to their security or satis-faction, they have a legal right, either by the voluntary ac-tion of the proper officers, or through the aid of the courts of the country, to such exercise of it. If, therefore, by the willful or stubborn inaction of the directors or stockholders, the company fails to meet its obligations and perform its duties, a court of equity will, on a proper application, afford the requisite relief. The following authorities cited by the counsel for the appellant clearly establish that, at the com-mon law and without any statutory authority for that pur-pose, and as a sort of distinct exercise of equitable jurispru-dence, courts of chancery will grant relief in such cases. They are *Spear vs. Grant*, 16 Mass., 9; *Vose vs. Grant*, 15 id., 505; *Wood vs. Dummer*, 3 Mason, 308; *Ward vs. Gris-woldville Man. Co.*, 16 Conn., 593; *Mann vs. Pentz*, 3 Comst., 415; *Nathan vs. Whitlock*, 9 Paige, 152; *Henry vs. V. & A. R. R. Co.*, 17 Ohio, 187; and *Ogilvie vs. Knox Ins. Co.*, 22 How. (U. S.), 380. These authorities also sustain the general principle above stated.

Such actions, when prosecuted independently of any stat-

utory provision, are sustained on the ground that the capital stock, being a trust fund, may be followed by the creditors and others having an interest in the proper application of it, into the hands of third persons having notice of the trust attaching to it; and that stockholders, whether delinquent or withdrawing, are always, both in law and fact, affected with such notice. The rights of creditors being superior, and partaking somewhat of the character of a lien, equity will regard and work them out by the same means by which the corporation itself should have done so. Such actions are also in many respects like an ordinary creditor's suit, but on account of the peculiar nature of the trusts to be enforced, I am inclined to agree with counsel that, at least as against stockholders, they might still be maintained, though the creditor's bill should be abolished by statute.

The practice in such case, in those states where the mode of closing up the affairs of non-paying and insolvent corporations, and of distributing the proceeds of their property and effects among their creditors, is governed by the common law, is, as indicated by the authorities to which reference has been made, precisely that which was adopted by the appellant in this case. The creditor is first to establish his claim by judgment at law, and then, after execution issued and returned in whole or in part unsatisfied, he may file his bill in his own behalf and in behalf of such other creditors of the corporation as may elect to become parties thereto, against the corporation and its delinquent or withdrawing stockholders, alleging the recovery and non-payment of his judgment, and praying the decree or order of the court that an account of the assets and debts be taken, and a receiver be appointed, and that the stockholders and officers pay in and account to the receiver for so much of the capital stock as will be sufficient to pay the debt of the plaintiff, and those of such other creditors as may choose to join him and come in under the decree ; and that the receiver be directed to apply the same in discharge thereof. Whether in those cases where the stockholders are not individually liable by law* for the debts of the corporation, one creditor can, by superior diligence, acquire a preference over the other creditors,

beyond that which might result from his judgment becoming a lien on specific property, or his having otherwise obtained a higher security at law, does not distinctly appear. But the conclusion from the cases and the general doctrines of courts of equity, is, I think, that he cannot, and that when he is obliged to seek the aid of those courts for the enforcement of his demand, he must do so for the benefit of all other creditors who may desire to unite with him; and that all must share alike, in proportion to the amount of their respective claims, in the funds which may be realized by the proceeding. The maxim of the law in like cases is, that equality is equity; and certainly no case more appropriate for its application could be imagined. I conclude, therefore, and the authorities clearly tend to show, that such is the practice.

The authorities likewise show that in such actions, unless it be impossible or impracticable, all the stockholders must be made parties. This is required in order to enable the court to do complete justice between the stockholders themselves, and so that no one of them may be compelled to pay more than his due proportion, and that all alike may be obliged, according to the number of their respective shares and their pecuniary ability, to contribute toward the losses which the company may have sustained. For it would be manifestly wrong and unjust to allow the creditors to select one or more of the stockholders and compel them to submit to burdens from which the other shareholders, though equally bound, are exonerated. Hence the shareholding defendants have the right, unless some good reason for the omission be shown, to insist on all other shareholders being parties also.

From this view of the general powers of courts of equity to manage and control the affairs of failing and bankrupt corporations, it becomes a matter of very little practical importance whether sections 6 and 7 of chapter 114, R. S., 1849, which were in force when this suit was instituted, and which are now found as sections 18 and 19 of chapter 148 of the revision of 1858, are held to be operative or not. If operative, they are in affirmance of the law as it was previously understood; if inoperative, no substantial change is occa-

June Term, 1860.

ADLER
v.
MIL.PAT.BRICK
MAN. CO. et al.

sioned. If they can be enforced, they only go to strengthen the powers which courts of equity heretofore possessed, to remove doubts, and to render the rules by which such proceedings are governed, more stable and undeviating. According to the construction which was given to these two sections together with the next twelve, by the court of appeals of New York, in the case of *Mann vs. Pentz, supra,* (our statute in this respect being a transcript of that of New York,) they have no bearing whatever upon the question of the power of courts of equity to compel delinquent subscribers to contribute from their unpaid subscriptions towards the payment of the debts of the corporation. They only govern the proceeding against the corporation itself, when a sequestration of its stock, property, things in action and effects, and the appointment of a receiver, are sought. The method of reaching delinquent stockholders and others indebted to, or holding the property of corporations of the kind to which these sections are applicable, was decided not to have been made the subject of statutory regulations at all. They are to be proceeded against according to the usual practice in courts of equity, the statutory provisions touching actions against the corporations themselves being at the same time considered. It was accordingly determined that it was not the proper course for a receiver appointed under section 18, to bring an action against a delinquent stockholder, and that he could not maintain one, but that the practice to be adopted was that which previously prevailed in like cases in equity, and that the stockholders should be made defendants in the action against the corporation. The court likewise held that sections 18 and 19, as found in the revision of 1858, applied to corporations doing a general business of any kind, except loaning money on pledges and deposits, and making insurances; and that sections 21 to 32 inclusive were confined in their operation exclusively to moneyed and insurance corporations, and had reference to no others. It was therefore determined that a receiver appointed under section 18 (it being a proceeding against a railroad company) had not the powers conferred by sections 23 and 24 upon receivers appointed under section 23; that his authority was

merely that of a receiver at the common law; and that the
extraordinary powers given by the two latter sections were
to receivers of moneyed and insurance corporations alone.
To the construction thus given to the statute, we see 'no good
ground of exception, and we therefore acquiesce in it as
correct.

The inquiry in this case is therefore limited to sections 18
and 19. With the remaining sections from 32 to the end of
the chapter, which are held applicable to a proceeding of
this kind, no particular fault is found. If we were called
upon to give effect to sections 21 to 32 as applicable to
moneyed and insurance corporations, we might find more dif-
ficulty, particularly with those in which an attempt is made
to define the powers of the receivers. We have no statute
regulating the proceedings in the case of a voluntary disso-
lution of a corporation, and providing for the appointment
of receivers therein and fixing their powers. But in the
present case I can see no such real difficulty. It is objected
`that the courts cannot enforce them, because section 19,
which directs the manner in which the property of the cor-
poration and the proceeds thereof shall be distributed, de-
clares that such distribution shall be among the fair and
honest creditors of the corporation, in proportion to their debts
respectively, and that they " *shall be paid in the same order
as provided in the case of the voluntary dissolution of a corpora-
tion."* It is said that in this provision as to the *order* of pay-
ment, the legislature referred to some statutory regulation
upon the subject of the voluntary dissolution of corpora-
tions, and that as we have none, the sections are inoperative
and void for uncertainty. It is the same objection as that
which has been suggested to sections 23 and 24. In support
of this position it is shown that our statute is borrowed bod-
ily from New York, and that in that state there is a statute
prescribing the manner in which voluntary dissolutions may
take place, which our legislature, whilst in the act of bor-
rowing, omitted to take; and that thus confusion and uncer-
tainty have been introduced. The language of our section
however varies somewhat from that of the corresponding
section in the statute of New York, and the change which

has been made is by no means calculated to confirm the impression that our legislature intended to refer to an order of payment prescribed by statute. The New York section reads that the creditors " shall be paid in the same order as provided *by this Title,* in the case of a voluntary dissolution of a corporation." In ours the words " by this Title" are omitted, which clearly demonstrates that the attention of our law makers was called to it, and that in their hurry and anxiety to avail themselves of the legislative labors of other states, they did stop to read the laws they were adopting. After noticing this departure from the words of the parent section, it becomes at least less clear that the legislature intended to refer to a statutory rule, and we can hardly say that such was the design. We are to so construe statutes as to give them force and validity if possible, and at the same time carry out the object which the legislature had in view. If there could be no order for the payment of debts in the case of a voluntary dissolution, except one fixed by the legislature, and the courts, in a case of doubt or controversy, could not, in the absence of a statute, direct the order of such payments according to the laws of the country and their own course and practice, then certainly there would be an obstacle in the way of their operation which could not easily be turned aside. But the law is otherwise. The legislature does not possess the sole power of prescribing the order of such payments. Without such legislative prescription, the courts can, and, when properly applied to, must do so. It is a judicial question of which they may take cognizance; and in determining it a court of equity would undoubtedly be governed by the maxim above referred to, and treat the claims of all honest creditors, saving only such as were entitled to a priority at law by a general or specific lien or otherwise, as equally meritorious and worthy of its care and protection according to their several amounts. The legislature of New York adopted this rule of the courts, and provided first, that those debts should be paid which were entitled to a preference under the laws of the United States; secondly, those which were liens on real estate, to the extent of the value of the real estate to which such liens attached;

and thirdly, all other debts in proportion to their respective amounts, without giving any preference to debts due on specialties.    I therefore see nothing in the way of the complete operation of the sections under consideration.

There is no objection to the form or substance of the complaint as a proceeding under sections 18 and 19.    9 Paige, 598; 10 id., 290.    The action was therefore properly instituted under them, and the stockholders were properly made defendants with the company.

The order of the circuit court dismissing the complaint, must therefore be reversed, and the cause be remanded for further proceedings in accordance with this opinion.