SCOTTISH COMMERCIAL INS. CO. (SHAW v.). See Case No. 12,723.

SCOVEL (HALL v.). See Case No. 5,945.

---

## Case No. 12,552.

SCOVILL et al. v. SHAW et al.

[4 Cliff. 549.] [1]

Circuit Court, D. Massachusetts. May Term, 1878.

BANKRUPTCY—ASSIGNEES — METHOD OF APPOINTING — JURISDICTION OF CIRCUIT AND DISTRICT COURTS—LIMITATION OF ACTIONS.

1. Assignees in bankruptcy are appointed by the creditors of the bankrupt, and the provision is, that as soon as the assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, and that such assignment shall relate back to the commencement of proceedings in bankruptcy.

2. Circuit courts have concurrent jurisdiction with the district courts of the same district, of all suits at law or in equity which may be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee touching any property, or rights of property, of said bankrupt, transferable to, or vested in, such assignee, but the same section provides that no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest touching the said property, in any court whatsoever, unless the same is brought within two years from the time the cause of action accrued to or against such assignee.

3. It was held that this claim was barred by the statute of limitations referred to.

The plaintiffs [Gustavus A. Scovill and others] were the assignees in bankruptcy of the Fort Scott Coal & Mining Co. The defendants [Lemuel Shaw and others] were the executors of Samuel Hooper, who died February 14, 1875, and they were appointed on the 15th of March of that year. By the law of Kansas any corporation may increase its capital stock to any amount not exceeding double the amount of its authorized capital. April 19. 1871, the company increased its stock to $200,000. On October 16, 1872, a further increase of $100,000 was made, and another of the same amount December, 1872. Thus the nominal capital was raised to $400,000. April 2, 1874, proceedings in bankruptcy were begun against the corporation, and the plaintiffs chosen assignees April 29, 1874. March 31, 1876, a petition to assess the capi-

[1] [Reported by William Henry Clifford, Esq. and here reprinted by permission.]

tal stock was filed in the court, and an order was issued April 5, 1876, to the stockholders, to show cause why the assessment should not be made. June 10, 1876, a decree of assessment was made, by which every stockholder was assessed $76 per share, less the amount paid in on his stock, and in default of payment the assignees were directed to sue. The assignees were directed to make a call and assessment in conformity with the order of court, and return the same before July 21, 1876. They made the assessment and call July 17, 1876. Suits were then brought against the persons appearing to be stockholders on the books at the time of the failure of the company. The stock was all issued as full paid, the company charging to discount, at the times of the issues, the difference between the amounts received by it and the par of the stock.

McComas & McKeighan, C. W. Blair, and A. A. Ranney, for plaintiff.

Does the two years' statute of limitations of Massachusetts, with reference to actions against executors and administrators, apply? We contend that it does not. The section is as follows: Gen. St. Mass. 491, § 5: "No executor or administrator, after having given notice of his appointment as provided in section 1, shall be held to answer to the suit of any creditor of the deceased, unless it is commenced within two years from the time of giving bond as aforesaid, except in the cases hereinafter mentioned." Section 721 of the Revised Statutes of the United States provides that "the laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as the rule of decision in trials at common law in the courts of the United States in cases where they apply." In McCluny v. Silliman, 3 Pet. [28 U. S.] 277, it was decided that, under the act of congress cited, the same effect should be given the statutes of limitations of the several states in the federal as in the state courts, where no special provision had been made by congress upon the subject. Congress has made a special provision, and made a statute of limitations upon the subject of actions by and against assignees in bankruptcy. Whether the act which congress passed includes the actions at bar, or not, is not material, as the fact that action has been taken by congress on the subject excludes state statutes. It was for congress to decide what classes of actions should be subject to limitation, and, having chosen, the legislation of congress cannot be supplemented by state legislatures. Congress had power, under the constitution, to pass the bankrupt act [of 1867 (14 Stat. 517)], and the legislation of a state cannot enlarge, control, or modify the legislation of congress in the exercise of an exclusive constitutional right. The statutes of limitations of the states, as the act of congress provides, cease to operate when the adjudica-

tion is made, but no right of action already barred is revived. . This is the full extent of the recognition of state limitations. Manifestly, on the defendant's theory that the act of congress includes all actions, the state statute has no application. Let us suppose at the date of the assignee's appointment Hooper's executors had been qualified one year eleven months and twenty-nine days, the assignees would have had one day to make their application, obtain their assessment, and to bring their suit. Congress did not intend to permit such absurdities. We maintain, then, that congress selected the class of cases to which there should be a two years' limitation, and that no state statute can be invoked.

It is claimed that the increase of stock from $200,000 to $300,000, and from $300,000 to $400,000, was ultra vires of the corporation. This might have been a good plea against the corporation, but is not admissible here. The doctrine of estoppel is applied in the following cases in favor of assignees: Payson v. Stoever [Case No. 10,863]; Upton v. Hansbrough [Id. 16,801]. If the increase was in fact invalid, it might have been made good by an amendment of their charter or the subsequent ratification by the legislature. Creditors cannot be placed in a worse position than if that had been done which might have been done. Narragansett Bank v. Atlantic Silk Co., 3 Metc. (Mass.) 287. Certificates required by law to be filed as compliance with the law cannot be disputed. Dooley v. Cheshire Glass Co., 15 Gray, 494. The individual members of a corporation cannot set up their own faults or mistakes against creditors. McHose v. Wheeler, 45 Pa. St. 32. Where a stockholder participates in the proceedings for increase of stock, he cannot question the validity of the acts. Kansas City Hotel Co. v. Harris, 51 Mo. 464. It is well established that the state alone can inquire into the validity of acts done by a corporation, since it is the creature of the state. It cannot be done in any collateral proceeding. If the state sees fit to decline the inquiry, the company or its members cannot institute the investigation when sued by creditors. Ang. & A. Corp. 518, 636; Brouwer v. Appleby, 1 Sandf. 168.

The liability of the stockholders to pay the assignees, who represent the creditors, such portion of the unpaid stock as may be necessary to liquidate the bankrupt's indebtedness, cannot be seriously questioned after the numerous decisions by the supreme court of the United States. The capital stock of a corporation is a trust-fund for the payment of its debts, publicly pledged to all who deal with it. Ogilvie v. Insurance Co., 22 How. [63 U. S.] 387. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Upton v. Tribilcock, 91 U. S. 47.

The capital stock is a substitute for the personal liability which subsists in private partnership. Sanger v. Upton, 91 U. S. 56. No subscription or express promise to pay is necessary. The taking and holding the stock raises and implies promise to pay. Webster v. Upton, 91 U. S. 65, and cases before cited. A corporation cannot give away its stock and issue paid-up certificates. Such action is ultra vires, at least as to those who deal with the corporation. Green's Brice, Ultra Vires, p. 142; Sawyer v. Hoag, 17 Wall. [84 U. S.] 610; Tuckerman v. Brown, 33 N. Y. 297; Ogilvie v. Insurance Co., 22 How. [63 U. S.] 380; Osgood v. Laytin, *42 N. Y. 521. Does the plea of the two years' statute of limitations of the bankrupt act constitute a good defence to their action?

Two questions must be passed on: (1) Does the statute apply at all to recover debts, or enforce a mere money liability on a contract? (2) Did the specific right of action to recover the assessments here sued on accrue to the assignees at the date of the deed of assignment, or when the assessments were made and payment refused? Section 2 of the bankrupt act, as it stood before the adoption of the Revised Statutes, was as follows: "Sec. 2. The several circuit courts of the United States, within and for the district courts where the proceedings in bankruptcy shall be pending, shall have a general superintendence and jurisdiction of all cases and questions under this act, and, except when special provision is otherwise made, may, upon bill of petition or other proper process of any party aggrieved, hear and determine the case in a court of equity. The powers and jurisdiction hereby granted may be exercised either by said court or by any justice thereof, in term-time or vacation. Said circuit court shall also have concurrent jurisdiction with the district courts of the same district of all suits, at law or in equity, which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt, transferable to, or vested in, such assignee; but no suit at-law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property or rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued for or against such assignee; provided, that nothing herein contained shall revive a right of action barred at the time such assignee is appointed." The first part of this section is jurisdictional, giving, first, a superintending and supervisory control to the circuit courts over district courts, and from the action of which no appeal or writ of error lies to the supreme court; and, secondly, concurrent plenary jurisdiction, in a distinct and accurately described class of cases, to the circuit courts. It will be conceded that the latter part of the section operates as a limitation only in the

cases to which concurrent jurisdiction is given. "Touching the property or rights of property aforesaid" sufficiently indicates that.

As to what cases the circuit courts had jurisdiction of by this section there have been several decisions by circuit courts, which all concur in denying jurisdiction to actions necessary to recover debts or money due on contracts, and confining the jurisdiction to actions wherein the defendant's claim, whether assignee or claimant, was adverse as to some interest in dispute. The language employed clearly indicates that the action must relate to something the existence of which is not the subject of the controversy, but which is adversely claimed. This is not so in an action to recover money on a debt. The defendants here do not claim the debt alleged, or any interest in it adversely to the assignee. The controversy is not, in whom is the right of property in the debt? but, is there a debt? If it is decided that there is no right of property, the defendants will not succeed as having an adverse and superior right to the debt, or any interest therein. The language of the act is: "Which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee." The "such person" referred to is the same person before described as an adverse claimant,—in one case plaintiff, in the other defendant. This could not be true as to creditor and debtor. The defendants here could not, in the nature of things, have any action to recover any portion of the assessment from the assignees. The bankrupt act, in section 1, had conferred on the district courts jurisdiction for "the collection of all the assets" of the bankrupt. The studied use of different language, not pertinent to the mere collection of debts, in two sections, one immediately following the other, shows that congress meant to distinguish between different subjects of controversy, having reference more particularly, in section 2, to disputes arising under section 35 of the act of 1867. The words used are not apt words to confer a general jurisdiction. They must be distended materially to admit of such a construction. Statutes are not to be so construed. They must receive the meaning which they naturally, and without strain, convey.

The following decisions construe section 2 as it stood in the act of 1867, before revision: Bachman v. Packard [Case No. 709]; Sedgwick v. Casey [Id. 12,610]; Davis v. Anderson [Id. 3,623]; Smith v. Crawford [Id. 13,030]; Stevens v. Hauser, 39 N. Y. 302; Union Canal Co. v. Woodside, 11 Pa. St. 176. The act of June 22, 1874 [18 Stat. 178], amended section 2 by inserting in the place of the word "same," in line 12, the word "any," and, after the words "claiming an adverse interest," the words "or owing any debt to such bankrupt." If the circuit court had jurisdiction to recover debts before the amendment, the amendment performs no office. It will be claimed, however, that

since the amendment the limitation clause of section 2 has been enlarged by the increased jurisdiction given to circuit courts by two things: first, by the intimate connection between the different parts of the section, and by the phrase, in the limitation clause, "touching the property or rights of property aforesaid." Even if section 2, at the date of the amendment, was in force as section 2, it would be more plausible than sound to say that the phrase quoted would refer to debts which were only brought into the jurisdictional clause by the amendment. If the decisions cited are correct, then the limitation clause did not apply to debts. The amendment does not profess to amend the limitation clause. It is left untouched. Statutes, like contracts, are to be construed with reference to the objects sought to be attained and the state of things existing at the time of their adoption. Congress, with the same ease and in the same amendment, could have inserted in the limitation clause, after the phrase "touching any property or rights of property," the words "or any debt owed to the bankrupt." It did not see fit to do it, but left the limitation clause to refer to what it did before. But the defendants are not entitled to the apparent advantage given them by considering section 2 still in force. The amendment of June 22, 1874, never did take effect as an amendment to section 2 as it stood before the adoption of the Revised Statutes. The revision went into effect on the same day of the amendment, June 22, 1874. Rev. St. 1091, 1092.

All acts of congress passed prior to December 1, 1873, any portion of which was embraced in any section of the revision, were repealed by express language. The bankrupt act of 1867 was, of course, passed prior to December 1, 1873, and the revision embraced section 2. Without, therefore, the aid of another section of the Revised Statutes, the amendment of June 22d would fall to the ground. And the same result follows whether the amendment is considered as going into effect before, at the same instant, or after the repeal. By the revision the different parts of section 2 were sent into independent and unconnected sections, unaffected by each other. The jurisdiction clause reappeared in section 4979, the limitation in section 5057. This is the only statute of limitations in force in the bankrupt act, and from it is stricken the word "aforesaid," and the language of the section made more emphatic—that it bars only suits "between the assignee and a person claiming an adverse interest." It cannot be claimed that section 5057 has been amended, nor would section 4979 be affected by the amendment of June 22, 1874, were it not for section 5601, p. 1092, of the Revised Statutes. By the terms of this section it is plain that the act of June 22, 1874, can only apply to, and amend, section 4979. It would seem that every pretence is taken away, by the revision, for contending that the amendment enlarging the jurisdiction also enlarges the limitation section. On the

contrary, the views we have insisted on are strengthened by the consideration that section 4979, as it now stands, divides the suits over which circuit courts have jurisdiction into two classes,—one class being where the claims of the assignee and claimant are adverse as to the subject-matter of the controversy, and the other class being actions to recover debts owed to the bankrupt. Section 5057 applies, by using the same language, only to the first class of actions. There may be reasons here for legislation, and there may not; but there is no ground for judicial intervention. Section 8 of the bankrupt law of 1841 [5 Stat. 446] is, in effect, the same as section 2 of 1867. In the cases of Stevens v. Hauser, 39 N. Y. 302, Union Canal Co. v. Woodside, 11 Pa. St. 176, Carr v. Lord, 29 Me. 54, and In re Conant [Case No. 3,086], it was decided that section 8 of the act of 1841 both as to jurisdiction and limitation applied only to actions where the interest in the subject-matter was adverse.

. Against cases cited, construing the eighth section, will be produced only two cases: Mitchell v. Great Works Milling & Manuf'g Co. [Case No. 9,662]; Pritchard v. Chandler [1d. 11,436]. We will be referred to the opinion of Judge Miller, in Bailey v. Glover, 21 Wall. [88 U. S.] 345, in which the strong language of the judge is supposed to favor the construction of the defendants. That decision, however, must be taken in connection with the case itself, which was a suit brought to set aside a conveyance to a fraudulent grantee. In that case the assignee was allowed to maintain his action, although begun more than two years from his appointment, the court holding that the statute did not run until the fraud was discovered by the assignee. In Clark v. Clark, 17 How. [58 U. S.] 315, in which the statute of limitations was pleaded, the supreme court said: "The interest adversely claimed, and which the statute protects, is an interest in a claimant other than a bankrupt."

The second question for the court to decide is when the right to recover the specific amount of money sued for accrued to the assignee. We claim that when the deed of assignment was made to the assignees their right of action against the stockholders depended upon a contingency, viz., whether the other assets of the company would be sufficient to pay its debts; and the amount which they would have a right to sue for depended upon what the difference between the assets and liabilities should turn out to be. The assignees, representing the creditors only in these suits, have no other legal or equitable right than that of recovering such assessment as the bankrupt court may determine necessary to discharge the company's indebtedness. Adler v. Milwaukee Patent Brick Co., 13 Wis. 57; Myers v. Seeley [Case No. 9,994]; Kennedy v. Gibson, 8 Wall. [75 U. S.] 505. This was held by Judge Treat, in Myers v. Seeley [supra]; and also in Chandler v. Keith, 42 Iowa, 99, and Payson v. Stoever [Case No. 10,863]. In both the first two cases the assignee and receiver brought suit with an

assessment, and their bills were dismissed, and they remanded the proceedings for an assessment. In both cases the reasons for the necessity of an assessment are ably given, and no court has held otherwise. In the case of Chandler v. Siddle [Case No. 2,594], circuit court of Iowa, a receiver had brought suit. The defendants demurred. Justice Miller, of the United States supreme court, sustained the demurrer, and dismissed the suit for want of an assessment. A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned to bring the action. 5 Barn. & C. 269; 8 Dowl. & R. 346. It will be claimed that the right of action of the assignees is like a note payable on demand, on which suit may be brought at once, the suit being held a sufficient demand. There is no analogy. There is more analogy in the case of a note payable at a certain time after demand, in which case a demand is necessary before suit. Little v. Blunt, 9 Pick. 488; Wenman v. Mohawk Ins. Co., 13 Wend. 267.

There must be an assessment by the court, and a failure to pay as ordered by the court, before the statute begins to run. Even as against a corporation, the statute of limitations does not begin to run until a call or assessment is made. Gibson v. Columbia & N. R. Co., 18 Ohio St. 396; Bigelow v. Libby, 117 Mass. 359. Howland v. Edmonds, 24 N. Y. 307, holds that a deposit note given to an insurance company was due when made, but the decision is put upon the express ground that, by the peculiar terms of the act of incorporation, the deposit notes did not represent shares of stock, but were funds upon which the company transacted its business; but intimated that, if the notes "were to be assimilated to the capital stock of other corporations in the quality of permanency, to be kept on foot during the life of the corporation, then it would be necessary to show losses in order to determine what portion of the note should be collected." We also claim that the plea of the statute of limitations is not good, because these suits are brought to enforce a trust. The statute does not run against an express trust until after the trustee has been called upon to execute his trust and he has refused or disavowed the trust. The trustee does not hold adversely to the cestui que trust until this refusal or disavowal. Ball. Lim. 309; Prevost v. Gratz, 6 Wheat. [19 U. S.] 481. In 3 Swanst. 585, Lord Nottingham defines an express trust as a "trust raised or created by the acts of the parties, which are declared either by word or writing, and these declarations are established either by direct or manifest proof or violent and necessary presumption." Tested by this rule there is no difficulty in reaching the conclusion that the defendants, as members of the corporation, are trustees of an express trust, and they did not hold adversely until after the call was made and they refused to pay.

In Payne v. Bullard, 23 Miss. 88, it is held directly that the stockholders could not interpose the plea of the statute of limitations, as the unpaid stock was a trust fund.

Sidney Bartlett, W. G. Russell, and Geo. Putnam, for defendants.

In the case of the executors of Samuel Hooper there is the defence that the action was not brought within two years from the date of the filing their official bond. Gen. St. Mass. c. 97, § 5. The state statute of limitations applies in the national courts equally as in the courts of the state. Brown v. Hiatts, 15 Wall. [82 U. S.] 177–183; Ross v. Jones, 22 Wall. [89 U. S.] 576. The actions are all barred by the statute of limitations (Rev. St. § 5057), which provides that no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, unless brought within two years from the time when the cause of action accrued for or against such assignee. It is settled that this section applies to all judicial controversies between the assignee and any person whose interest is adverse to his, including actions like these now before the court. Bailey v. Glover, 21 Wall. [88 U. S.] 342; Walker v. Towner [Case No. 17,089]. The present actions against all the defendants were brought more than two years after the appointment of the assignee; and the question therefore is whether the cause of action then accrued to him or arose at a later period. We contend that it accrued immediately on his appointment. The cause of action is the obligation of the defendants to pay up for the benefit of creditors the amounts unpaid upon stock held by them and issued as full paid. It is not the assessment by order of the bankrupt court. At any time after the failure of the corporation any creditor could have brought a bill in equity against the corporation and its stockholders to enforce the payment of the capital stock, so far as it remained unpaid. Hall v. U. S. Ins. Co., 5 Gill, 484; Henry v. Vermillion, etc., R. Co., 17 Ohio, 187; Ogilvie v. Knox Ins. Co., 22 How. [63 U. S.] 380; Adler v. Milwaukee Patent Brick Manuf'g Co., 13 Wis. 61; Mann v. Pentz, 2 Sandf. Ch. 257. All the decisions recognize that the stockholders who have not paid for their stock in full are debtors of the corporation; and it has been held that, upon the failure of the corporation, their liability becomes absolute without any call or assessment. Henry v. Vermillion, etc., R. Co., 17 Ohio, 187; Terry v. Anderson, 95 U. S. 628. So delinquent stockholders of an insolvent corporation may be proceeded against by the corporation or by those stockholders who have paid in full for their stock. Society v. Abbott, 2 Beav. 559; Wallworth v. Holt, 4 Mylne & C. 619; Nathan v. Whitlock, 9 Paige, 152. And, upon the bankruptcy of the corporation, the suit, which up to that time might have been brought by any creditor, may be brought by the assignee, who represents all the creditors. Sanger v. Upton, 91 U. S. 56, 62; Wilkins v. Davis [Case No. 17,664].

Probably the practice of making an assessment under the direction of the court of bankruptcy has arisen from the following considerations or some of them: The fact that, in all the cases in which assessments have heretofore been made in bankruptcy, the stock was, and upon its face appeared to be, only partially paid and subject to assessment only by regular calls or some substitute therefor. The subscriber's contract was thought to entitle him to a call. Chandler v. Siddle [supra]. The importance to the assignee of obtaining in advance the sanction of the court before entering upon litigation so complicated and expensive as proceedings to collect subscriptions of numerous and scattered stockholders. The convenience in litigation in various jurisdictions of having the preliminary questions of the deficiency of assets, the necessity of an assessment and the amount to be raised settled in advance and once for all. But in the present case the stock was originally issued as full paid. No calls could have been made or were necessary. The subscribers became bound, upon taking full-paid shares, to pay for them in full, and no agreement on the part of the corporation to treat the unpaid portion as paid could be set up in any suit brought for the benefit of creditors. Upton v. Tribilcock, supra. The defendants, therefore, so far as liable at all, were debtors to the corporation for payment of its debts to the amount unpaid on their shares, and those amounts could, immediately upon his appointment, have been sued for by the assignee, in equity, and probably at law, as debts absolutely due. Henry v. Vermillion, etc., R. Co., 17 Ohio, 187; Terry v. Anderson, 95 U. S. 628.

The first of the reasons above assigned for an assessment, therefore, does not apply to the present case. There was no contract to pay upon assessment and call, and no need of either. But whatever reasons may have led to assessments by the bankruptcy court, instead of bringing bills in equity, without previous assessment, it is obvious that the difference between the two methods of procedure is one of remedy and not of right, and that the cause of action in both methods is the same, viz., the obligation of the stockholders and not the assessment by the court. It will accordingly be found that in all the actions which have been brought against stockholders by assignees, including those now before the court, the facts deemed necessary to establish the original liability have been alleged and established without relying on the order of the bankrupt court as merging the old cause of action or creating a new one. And in most of the cases, after the assessment by the bankrupt court, a trial has been had upon the original merits, and the courts have dealt with all the defences as open, notwithstanding the assessments. Moreover, it is plain that the assessment of the bankruptcy court is not such a distinct, specific decree against each

stockholder separately for the payment of a definite sum of money, as to merge the original cause of action, or to become in itself a new cause of action against the stockholders severally. Sadler v. Robins, 1 Camp. 253; Pennington v. Gibson, 16 How. [57 U. S.] 65; Seligman v. Kalkman, 17 Cal. 153. In suits of an analogous description brought for the benefit of creditors, upon a statutory liability of stockholders to make good the impaired capital stock of the corporation, it was expressly decided in Massachusetts that the liability attached and the statute of limitations began to run immediately upon the commencement of proceedings against the corporation, and not at the time when, in the course of the winding-up, the amount of the deficiency had been determined. It was held that if the liability of stockholders to a bill in equity or any other process for the benefit of the billholders existed, the statute of limitations began to run from the time when such liability accrued, and would bar an action to enforce a remedy founded upon an assessment made in the cause, although that remedy had not existed for the statute period. It was contended that the statute began to run when the plaintiff's title to the relief prayed for accrued. It was held that it began to run when the defendant's liability in any form accrued. It was further contended that the statute did not begin to run until the amount of the defendant's liability was ascertained in the winding-up process; but it was held that proceedings against stockholders might begin without waiting for the amount of their liability to be so determined, and might go on pari passu with the winding-up proceedings. It was further held that, if it was otherwise, it followed that the proceedings for ascertaining the amount must be completed and the action be brought within the statutory period. Baker v. Atlas Bank, 9 Metc. (Mass.) 182; Com. v. Cochituate Bank, 3 Allen, 42.

The reasoning of these cases is decisive of the present case. But recent decisions of the supreme court of the United States have a still closer application as well as a binding force. In Terry v. Tubman, 92 U. S. 156, the court held that the liability of a stockholder of a bank, under a statute providing that the individual property of the stockholders should be bound for the ultimate redemption of the bills of the bank, accrued, and the statute of limitations began to run, immediately upon the notorious insolvency of the bank, and not when the deficiency in the assets of the bank had been ascertained; and in Terry v. Anderson, 95 U. S. 628, which was a bill brought by a creditor against assignees and stockholders of an insolvent bank, to compel the former to collect and the latter to pay the amounts remaining unpaid upon their shares, it was held that such unpaid amounts were debts due to the bank, and might, in the absence of any provision in the charter of the corporation requiring assessments and calls as a condition precedent to liability, have been collected by

the bank at any time, and were therefore barred by the lapse of the time limiting actions since the failure of the bank. In the present case there is no charter or statute entitling subscribers to stock to a call before suit; and if there were it would be inapplicable, because such a provision applies only where the stock has been issued as partially paid, and not where it has been issued as fully paid. In the latter case there is no right to make or to insist upon a call, because the stock is immediately payable. If, then, the company had gone into bankruptcy after the limitation of actions by the corporation against the stockholder had expired, Terry v. Anderson is decisive that no right of action would have accrued to the assignees and no assessment could have been made. Upon the same reasoning, the right of action remaining in the corporation did accrue to the assignees immediately on their appointment, and is barred by the subsequent lapse of two years before bringing suit.

It may be urged that, although the assignee might have brought his bill in equity against all the stockholders on his appointment, he could not have brought his several actions at law until after an assessment, and that therefore the assessment is the foundation of the present actions, which for that reason are not barred. To this we answer: According to the reasoning of the authorities just cited, an action at law accrued at once to the assignee, upon his appointment, against each stockholder for the amount unpaid upon his stock without any call, because the stock was issued as fully paid, and therefore raised a liability in the taker to pay it at once without assessment or call. If a stockholder were sued, he could not set up that, by the by-laws of the corporation or the terms of his subscription, he was only bound to pay for his stock as calls were made, either by the directors or by some tribunal having in charge the liquidation of the company, as in the case of holders of stock which was issued as only partly paid. The answer would be that, having taken the stock as fully paid, he became bound to pay the whole, and that calls were only necessary where the agreement between the stockholder and the corporation provided for them, either expressly or by the nature of the contract involved in the issue of stock as and for partly paid stock. No case has arisen before in which an assignee has proceeded to enforce payment of stock improperly issued as fully paid; but it is submitted that upon principle and authority he might have proceeded directly as upon a debt already due. If this were otherwise, it is nevertheless a sufficient objection to his maintaining this action that he might have maintained his bill in equity without waiting for the assessment by the bankrupt court. He had his election either to proceed in equity at once, or to make an assessment under order of the bankrupt court, and then proceed at law. He might, with proper diligence, have obtained his assessment in

season to have brought his actions within the two years; for it cannot be necessary that the precise condition of the estate should be ascertained before making an assessment. On the contrary, the proper course is to make an assessment at once upon an approximate estimate of the condition of the estate. Kennedy v. Gibson, 8 Wall. [75 U. S.] 505; Com. v. Cochituate Bank, 3 Allen, 42, 50; Baker v. Atlas Bank, 9 Metc. (Mass.) 197, 198. And even if this were not so, and the actions at law could not with due diligence have been brought within two years, then it was the duty of the assignee to have elected the remedy which could be availed of within the time of limitation. He should have brought his bill in equity. It is not the action, but the cause of action, the accruing of which causes the statute to begin to run; and the assignee cannot gain time to prosecute a claim by electing a remedy which cannot be made available till after the claim is barred.

The policy of the statute which calls for speedy settlement of bankrupt estates favors the construction for which we contend. Bailey v. Glover, 21 Wall. [88 U. S.] 342. And considerations of general equity and public policy are equally strong in our favor. It would be a serious grievance if the stockholders of an insolvent corporation could be called upon at any time, however remote, at which the assignee might choose to procure an order of assessment, and when the obligations of those who should then be living and solvent should be enhanced by the insolvency, or the death, and the operation of special statutes of limitation upon the estates, of others. In the present case, the contribution of Mr. Hooper's estate is lost by the operation of the state statute of limitations in favor of his executors, and upon the theory of the plaintiffs another assessment may have to be made to make good the deficiency thus caused. It cannot be that congress intended that there should be no limitation to suits by assignees against stockholders; but that is the result if these actions are maintained. It cannot be contended that the application for an assessment is the proceeding which must be brought within two years. That application is not a suit. It is not even necessary that the stockholders should be parties to it. Upton v. Hansbrough [Case No. 16,801]; Sanger v. Upton, 91 U. S. 56. It is only a summary proceeding in the administration of the estate of the bankrupt corporation, and not an action either in law or equity, within the meaning of section 5057. The actions in this court are the first suits which have been brought against these defendants on their liability as stockholders, and afford them the first opportunity they have had for pleading the statute of limitations.

CLIFFORD, Circuit Justice. Assignees in bankruptcy are appointed by the creditors of the bankrupt, and the provision is, that as soon as the assignee is appointed and qualified, the judge, or, where there is no opposing interest, the register, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, and that such assignment shall relate back to the commencement of the proceedings in bankruptcy. 14 Stat. 522.

Circuit courts have concurrent jurisdiction with the district courts of the same district, of all suits at law or in equity which may be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt, transferable to or vested in such assignee; but the same section provides that no suit at law or in equity shall, in any case, be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property and rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued for or against such assignee. 1 Stat. 518. Certain other cases of like character are also described in the transcript as pending in the same court, but it is stated in the agreed statement that the case above mentioned is submitted to the court upon the statement of facts signed by the attorneys of the parties.

Sufficient appears to show that the complainants are the assignees in bankruptcy of the coal and mining company which was incorporated November 25, 1870, and was adjudged bankrupt April 11, 1874, as appears by the record of the bankrupt proceedings. On the other hand it appears that the respondents are the executors of Samuel Hooper, who died February 14, 1875, and that they were duly appointed as such executors on the 15th of March in the same year; that the coal and mining company was incorporated with a capital of $100,000, divided into shares of $100 each; that on the 19th of April of the next year the capital stock was increased from $100,000 to $200,000. Two additional issues of stock were made by the corporation: one, October 16, 1872, of $100,000, the other, December 27th, in the same year, of a like amount. But the respondents deny that the corporation had any powers to issue any such additional stock, and claim that the certificates are ultra vires, and absolutely null and void.

It is agreed that the testator, at the time the company was adjudged bankrupt, then being in full life, held one hundred and fifty shares of the first two issues, upon which he had paid to the company $40 per share; that he also held of the third issue seventy-five other shares, on which he had paid to the company $50 per share. Proxies were executed by him September 24, 1872, and December 21st, in the same year. By the terms of the first proxy he authorized the

person therein named to vote at a meeting of the stockholders, to be held at the office of the company at the time therein mentioned; but there is no evidence that the person named attended the meeting or gave any vote. Whether he voted for the third issue of the stock, therefore, does not appear; but it does appear that he held at the time mentioned seventy-five shares of the additional stock created at that meeting. None of the stock constituting the fourth issue was held by the decedent, but it appears that his proxy gave two hundred and twenty-five votes for the increase authorized at the meeting which increased the stock to $400,-000.

Taken as a whole, the complainants insist that the evidence contained in the agreed statement is sufficient to show that the testator of the respondents was and is estopped to set up the defence that the last issue of the stock was without authority and invalid.

Difficulty would attend the solution of that question, but the court is of the opinion that it is not necessary to decide the question, for the reason given in Foreman v. Bigelow [Case No. 4,934], that the claim is barred by the statute of limitations. Authorities referred to in that case will not, with one or two exceptions, be reproduced, nor will the reasons there given in support of the conclusion be repeated. Suffice it to say that it is now settled that the statute of limitations is as applicable in the national as in the state courts (Brown v. Hiatts, 15 Wall. [82 U. S.] 183; Ross v. Jones, 22 Wall. [89 U. S.] 576); and that the section of the bankrupt act referred to applies to all judicial controversies between the assignee and any person whose interest is adverse to his, in behalf of the bankrupt's estate, including actions like the one now before the court (Bailey v. Glover, 21 Wall. [88 U. S.] 342; Walker v. Towner [Case No. 17,089]).

Creditors, after the failure of the corporation, could have brought a bill in equity against the corporation, and joined the stockholders to enforce the payment; and it is equally clear that the assignee might have sued, the moment the title to the estate of the bankrupt was duly conveyed to him as such assignee. Hall v. U. S. Ins. Co., 5 Gill, 484; Henry v. Vermillion, etc., R. Co., 17 Ohio, 187; Ogilvie v. Insurance Co., 22 How. [63 U. S.] 380; Adler v. Milwaukee Patent Brick Manuf'g Co., 13 Wis. 61; Mann v. Pentz, 2 Sandf. Ch. 257. Stockholders, under such circumstances, are debtors to the corporation; consequently, as Chief Justice Waite held, the claim against them passed to the assignee as part of the property, estate, and credits of the bankrupt. Terry v. Anderson, 95 U. S. 636. Since that decision it seems to be unnecessary to argue in support of the proposition, as it is established by the highest authority known to our law.

Judgment for the defendants.