66  378
166  440

MINNEAPOLIS PAPER COMPANY v. SWINBURNE PRINTING COMPANY
and Others.[1]

December 7, 1896.

Nos. 10,248—(121).

### Corporation—Liability of Stockholders—Who may Enforce—Assignment for Creditors.

Various provisions of G. S. c. 76, considered and construed in the light of their history, and *held*: First. In the case of "moneyed corporations," described in section 12, an action may be instituted by a simple contract creditor to sequestrate the corporate assets, and to enforce the individual liability of stockholders for the deficiency. Second. In the case of other corporations, whenever there are any corporate assets subject to sequestration in the suit, an action to enforce the liability of stockholders for corporate debts can only be instituted by a judgment creditor, as provided in section .9. Third. But where there are no corporate assets subject to sequestration in the action, and hence the only relief obtainable is an enforcement of the individual liability of the stockholders, an action for that purpose may be instituted by a simple contract creditor. Hence, where a corporation has made an assignment, under the insolvent law, of all its assets, for the benefit of creditors, a simple contract creditor may institute a subsequent action to enforce the liability of stockholders for such part of the corporate debts as may remain unsatisfied after the corporate assets shall have been administered and distributed under the assignment.

Appeal by certain defendants from an order of the district court for Hennepin county, Elliott, J., overruling a demurrer to the complaint. Affirmed.

*Walter C. Tiffany, Hahn & Hawley*, and *Woods & Kingman*, for appellants.

*Welch, Hayne, Hubachek & Conlin*, for respondent.

MITCHELL, J.    This action was brought by the plaintiff, in behalf of itself and all other creditors, against the defendant corporation and all its stockholders, to enforce the constitutional liability of the latter for corporate debts.    The defendant company was not what is called a "moneyed corporation."    The complaint contains no allegation that the plaintiff had obtained judgment against the defendant

---

corporation, but it does allege that it, being hopelessly insolvent, had, before the commencement of this action, made an assignment, under the insolvent law of this state, of all its property for the benefit of all its creditors; that all of such property was in the possession of the assignee, who was engaged in converting it into money for the benefit of creditors; that its value did not exceed one-fifth of the amount of the claims already proved and allowed against the corporation. It will be observed that the object of the action was, not to sequestrate the corporate assets (if an assignment had been made as alleged, there could be no assets to sequestrate), but to enforce the personal liability of the stockholders for corporate debts.

The only question raised by the demurrer to the complaint, and by the appeal from the order overruling it, is whether it was necessary, in order to maintain the action, that a judgment should have been first obtained against the corporation, and an execution thereon returned unsatisfied, as provided by G. S. 1878, c. 76, § 9.[2] Very little aid in the determination of this question will be derived from decisions in other states, under different statutes, or in the absence of any statute on the subject. The case resolves itself into a question of the construction of the various provisions of chapter 76; and, to construe these provisions intelligently, it is necessary to refer to the history of that chapter,—a subject which we had occasion to consider somewhat in McKusick v. Seymour, Sabin & Co., 48 Minn. 158, 50 N. W. 1114.

It is well known that Rev. St. 1851, c. 77, was a transcript of Rev. St. Wis. 1849, c. 114. Wisconsin had previously borrowed the provisions of that chapter from 2 Rev. St. N. Y. 1829, p. 462, c. 8, art. 2. By our Revised Statutes of 1866, chapters 76 and 77 of the Statutes of 1851 were consolidated, and chapter 76 adopted in substantially its present form. In New York and Wisconsin it was held that the provisions corresponding to sections 9 to 20, inclusive, of our Revised Statutes of 1851 (which include sections 12 to 22,[3] inclusive, of our present chapter 76), applied only to "moneyed corporations" of the kinds described in section 12 of our present chapter 76; that the provisions corresponding to sections 9 and 10[4] of our present statute,

<hr>

[2] G. S. 1894, § 5897.    [3] G. S. 1894, §§ 5900–5910.
[4] G. S. 1894, §§ 5897, 5898.

which referred to corporations other than moneyed, simply provided, as their language implied, for a summary mode of compelling the application of the corporate assets to the payment of corporate debts, and hence that, in an action brought under these sections, delinquent stockholders, or stockholders who were personally liable for corporate debts, could not be reached; that the only remedy of creditors was, after the corporate assets were exhausted, to bring a suit against the stockholders, which would be governed by the general principles and practice of equity.   Mann v. Pentz, 3 N. Y. 415; Adler v. Milwaukee P. B. Mnfg. Co., 13 Wis. 57.

The language of those sections which were held to apply exclusively to moneyed corporations clearly implies that an action such as the statute authorizes might be brought by a simple contract creditor, in which not only would the corporate assets be sequestrated, but also the personal liability of stockholders, directors, or other superintending officers for corporate debts, might be enforced, and they be compelled to contribute to pay the deficiency after the corporate assets were exhausted.   And we take it that it was well settled that, in order to maintain such an action under this statute in the case of such corporations, it was not necessary that a plaintiff creditor should have first obtained judgment against the corporation.   Such we assume to have been the law in this state down to 1866.   But in McKusick v. Seymour, Sabin & Co., supra, we held that the effect of the revision of 1866, by which chapters 76 and 77 of the Revised Statutes of 1851 were, with certain changes, consolidated into one entitled "Actions respecting corporations," the first section of which [5] declared that "this chapter embraces all corporations," was to make all the provisions of the chapter applicable to all corporations (whether moneyed or not), unless expressly limited in their application.   Probably we should have added, "or unless, in their nature, they were clearly inapplicable to corporations generally."   Hence we held in that case that in an action under chapter 76, although the corporation was not a moneyed one, the individual liability of stockholders for corporate debts might be enforced.   This could be done, not by virtue of sections 9 and 10 (for they, by their terms, refer only to the sequestration of corporate assets), but by virtue of subsequent sections, notably section 17,[6] which

[5] G. S. 1894, § 5889.                    [6] G. S. 1894, § 5905.

prior to the revision of 1866, had applied only to moneyed corporations.

The result of the peculiar form of chapter 76, as revised, is that we have one section (9), referring by its terms exclusively to the sequestration of corporate assets, which gives the right to maintain such an action only to a judgment creditor upon whose judgment execution has been returned unsatisfied; while we have other sections, now applicable to all corporations, which, standing by themselves, allow a simple contract creditor to maintain an action both to sequestrate corporate assets, and to enforce the individual liability of stockholders for corporate debts. It therefore becomes the duty of the court to harmonize these provisions by holding that the latter are limited and qualified by the former, but they should be held to be thus limited and qualified only to the extent necessary to remove the inconsistency.

Bearing in mind that sections 9 and 10 refer only to the sequestration of corporate assets, and also that in any action under chapter 76 the corporate assets must be sequestrated and exhausted before resort can be had to stockholders to pay the deficiency, it is evident that the inconsistency between the different sections exists only where there are corporate assets which are the subject of sequestration in the action. Hence, in order to harmonize the different provisions of the statute, it is only necessary to hold that the sections relating to actions to enforce the liability of stockholders are limited or qualified by section 9 merely in cases where there are corporate assets to be thus sequestered. Otherwise expressed, the rule would be that, where there are corporate assets subject to sequestration in the action, no suit can be instituted under chapter 76 to enforce the liability of stockholders of a corporation, other than a money one, except by a judgment creditor, unless the obtaining of such a judgment has been rendered impossible by the act of the corporation or of the law; but where there are no corporate assets that can be the subject of sequestration in the action, and hence the only relief sought or obtainable is the enforcement of the individual liability of stockholders, an action under chapter 76 for that purpose may be instituted by a simple contract creditor. We may not heretofore, expressly and in so many words, have announced this line of distinction, but, so far from these views being in conflict with our former decisions, they are in entire accord with them.

Rule v. Omega Stove Co., 64 Minn. 326, 67 N. W. 60, has no bearing on the question. That action was against the stockholders of a foreign corporation, and it was expressly held that the provisions of chapter 76 applied only to domestic corporations.

In Klee v. E. H. Steele Co., 60 Minn. 355, 62 N. W. 399, we held that sections 9 and 17 of chapter 76 of the General Statutes of 1878 (G. S. 1894, §§ 5897, 5905) must be construed together, and the provisions of the latter limited or qualified by the provisions of the former, and consequently that the plaintiff could not maintain that action, because he had not first obtained a judgment against the corporation. But in that case there were corporate assets to be sequestrated in the action, and that was part of the relief demanded. It is true that after the action was commenced the corporation had assumed to make an assignment of all its property for the benefit of creditors, but under the doctrine of State v. Bank of New England, 55 Minn. 139, 56 N. W. 575, this would not defeat the action, or exclude the corporate assets from sequestration therein.

In the present case the assignment was made prior to the commencement of the action. The corporate assets had already been sequestrated, and were in custodia legis; and, under the decisions of this court, the subsequent action under chapter 76 would not annul or displace the assignment. Olson v. Cook, 57 Minn. 552, 59 N. W. 635; Walther v. Seven Corners Bank, 58 Minn. 434, 59 N. W. 1077. Therefore the result of our construction of these provisions of chapter 76 is as follows:

First. In the case of moneyed corporations described in section 12, an action may be instituted by a simple contract creditor to sequestrate and administer the corporate assets and to enforce the individual liability of stockholders for the deficiency.

Second. In the case of other corporations, whenever there are any corporate assets subject to sequestration, an action to enforce the liability of stockholders can be instituted only by a judgment creditor, as provided in section 9.

Third. But where there are no corporate assets which can be the subject of sequestration in the action, and hence the only relief sought or obtainable is the enforcement of the stockholders' liability, an action for that purpose may be instituted by a simple contract creditor.

If it be asked, what is the reason for this distinction between mon-

eyed and other corporations, if all the provisions of chapter 76, not otherwise limited, are now applicable to all corporations? the answer is that section 12 and the three immediately following, which are expressly or by necessary implication still limited to moneyed corporations, show clearly that it was the legislative intent to retain unchanged the more summary mode of winding up the affairs of insolvent corporations of that kind. We have frequently called attention to the distinction in that regard between the two classes of corporations. See Klee v. E. H. Steele Co., supra; American Sav. & L. Ass'n v. Farmers & M. State Bank, 65 Minn. 139, 67 N. W. 800.

Recognizing as we do the distinction between impossibility and mere futility, we do not wish to be understood as holding that anything short of the former will excuse a failure to comply with a statutory requirement; and that is as far as most of the cases cited by plaintiff go,—notably those from Massachusetts and New York. We place our decision upon our construction of the statute, that in a case like the present the rendition of a judgment against the corporation, and the return of an execution unsatisfied, is not a statutory requirement. And for the same reason we are not concerned to inquire what the rule would be if there was no statute on the subject, and creditors were relegated for their relief against stockholders to an equity action, to be governed by general equitable principles and rules of practice, although the tendency of the authorities seems to be to the effect that mere futility would be sufficient to except a case from the general rule that a creditor must exhaust his legal remedies before resorting to equity. Where a corporation has made an assignment under our insolvent law for the benefit of creditors, all corporate assets of every name and nature necessarily pass to the assignee, and, in the very nature of things, there could not be any corporate assets subject to sequestration in a subsequent action under chapter 76. Hence the allegations of the complaint made a case which entitled plaintiff, although merely a simple contract creditor, to institute this action.

This is as far as it is necessary to go for present purposes. But, to avoid misapprehension, we wish to add that a simple contract creditor should never be allowed to maintain such an action unless it is conclusively established by some judicial proceedings that all corporate assets have been already sequestered, and hence that there are

none remaining which can be the subject of sequestration in the action. The existence or nonexistence of corporate assets should never be left to be determined by evidence in pais. The practical evils and difficulties that would result under such a practice are very apparent. Where the corporate assets are in custodia legis under a general assignment under the insolvent law, and have been, or are in process of being, administered under the direction of the court, the case comes within this rule. Whether there are other cases that would come within the rule, as, for example, where the corporation has been dissolved, and its assets have been distributed or are in process of distribution by a receiver under the provisions of G. S. 1878, c. 34, § 415 et seq.,[5] we need not now determine.

Order affirmed.