[Civ. No. 28848. First Dist., Div. Three. Aug. 3, 1972.]

FRANCES M. THRASHER, Plaintiff and Appellant, v.
ELBRIDGE WELDON THRASHER et al., Defendants and Appellants.

COUNSEL

Richard E. Rader for Plaintiff and Appellant.

C. Dan Lange for Defendants and Appellants.

OPINION

DRAPER, P. J.—The principal question here is whether defendant husband (herein called appellant) who dominated the management and directorship of Elk Cove Lumber Co., Inc., can be held liable to the corporation in this shareholders' derivative action for the timing and manner of repayment by Elk of sums legally owing to Thrasher upon demand notes properly executed by the corporation.

We cannot accept appellant's contention that, as a matter of law, the propriety of his advances to the corporation renders him immune to liability for the timing, manner and results of his compelling repayment thereof, even if his intent, motive and purpose was the financial destruction of the corporation.

" 'A director is a fiduciary. [Citation.] So is a dominant or controlling stockholder. . . . Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. . . . The . . . test is whether or not . . . the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.' . . . 'He who is in such a fiduciary position . . . cannot manipulate the affairs of his corporation to their detriment. . . . He cannot by the use of the corporate device avail himself of privileges normally permitted outsiders in a race of creditors.' " (*Pepper* v. *Litton,* 308 U.S. 295 [84 L.Ed. 281, 60 S.Ct. 238], quoted and applied in *Remillard Brick Co.* v. *Remillard-Dandini,* 109 Cal.App.2d 405, 420 [241 P.2d 66].)

The language of some cases (*Todd* v. *Temple Hospital Assn., Inc.,* 96 Cal.App. 42, 47 [273 P. 595]; *Reed* v. *South Shore Foods, Inc.,* 229 Cal. App.2d 705, 714-715 [40 Cal.Rptr. 575]) may indicate that the inquiry ends upon determination that the original indebtedness was properly incurred. But the overriding qualification clearly stated in other cases on the point is that the director's action is " 'always subject to severe scrutiny

and under the obligation of acting in the utmost good faith.' " (*Schnittger v. Old Home etc. Min. Co.,* 144 Cal. 603, 607 [78 P. 9].) ■ The holders of half the voting shares of a corporation may elect to wind up and dissolve the corporation (Corp. Code, § 4600). But that right is not absolute. It cannot be exercised to defraud other shareholders or for other improper purposes (*In re Security Finance Co.,* 49 Cal.2d 370, 376-377 [317 P.2d 1]). ■ Majority shareholders, as fiduciaries, are restricted in the use of their powers. "Any use to which they put the corporation . . . must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." (*Jones* v. *H. F. Ahmanson & Co.,* 1 Cal.3d 93, 108 [81 Cal.Rptr. 592, 460 P.2d 464].) ■ Although we find no decision flatly deciding the issue before us, we are satisfied that the established requirement of scrupulous fairness permits inquiry into the motives and purpose of the dominant shareholder in his enforcement of repayment otherwise properly recoverable by him. Nor does the code provision (Corp. Code, § 820) aid appellant in this respect (*Remillard Brick Co.* v. *Remillard-Dandini, supra,* at pp. 418-419).

■ Thus we look to the record to determine whether the evidence supports the finding that appellant did not act in good faith and with due regard for the interests of the corporation and its other shareholders.

Appellant and his wife, plaintiff herein, owned 74 percent of the shares of Elk as joint tenants. In August 1965, husband and wife had an acerbic argument, and three days later she filed an action for divorce. Appellant had advanced more than $240,000 to Elk, and had taken demand notes bearing interest at 6 percent. On September 8, 1965, after filing of the divorce action, appellant advanced an additional $60,000 to Elk. This money came from a joint bank account of husband and wife, and was withdrawn from that account without the wife's consent. There is testimony that appellant said he was making this loan from their joint account because he "didn't want [his wife] to have any of it." Shortly after this action was filed, appellant purported to remove his wife as a director of Elk. Although appellant had been president, chairman of the board and the dominating factor in Elk before the marital dispute, he had taken but one repayment of $50,000 before that event. On February 1, 1966 he caused $60,000 to be repaid, and from June 6 to December 12, 1966, he took a total of $85,500 in such repayments. By the end of September 1966, before the last two payments totalling $25,500, Elk showed a cash deficit of $102,000 and current liabilities of $98,900. In April 1967, at appellant's instigation, a notice of election to wind up and dissolve was filed. After the date of the wife's purported removal from the board, on October 20, 1965, she received no notice of meetings of the board. There is testimony that appel-

lant's counsel, shortly after the domestic dispute began, stated that Elk would never show a profit or have any value so long as respondent continued to hold an interest in it. Although some of the evidence was contradicted, and inferences favorable to appellant may be drawn from some of it, there obviously is evidence of substance to support the finding of the trial court that the demise of Elk was planned by appellant, who enforced collection of the debt due him for the express purpose of furthering this end.

■ Appellant's counsel now argues that enforcement of collection was necessary to prevent running of the statute of limitations. But the regular payments of interest by Elk prevented any such result (Code Civ. Proc., § 360). Moreover, appellant, although he testified at length, nowhere advanced this suggestion. He did testify that he withdrew money from Elk only as he needed it. But he was the sole owner of all the stock of Al Thrasher Lumber Co., Inc., a consistently profitable operation. There is no showing whatever of any financial need for him to use his dominance of Elk to compel it to repay him $145,500 in some 10 months from February 1, 1966, shortly after the marital breakup of the parties.

■ We find no error in the award of damages. It is true that Elk had but a five-year lease upon the mill it operated, with an option to purchase. The evidence indicates that exercise of the option to buy would be of doubtful advisability financially. It is also true that in its early stages the Elk operation was not profitable. But for two fiscal years before the commencement of large payments to appellant, it had shown operating profits of $59,000 and $65,000. An operating loss occurred in the first quarter of the 1966-1967 fiscal year in which heavy withdrawals were made by appellant. It follows that the evidence sufficiently supports the several awards of damages.

We note, however, as to respondent's appeal, that the brief lease period doubtless did influence the court to hold its awards to a figure somewhat less than would otherwise have been allowed. We find no error in that respect.

The evidence supports the trial court's finding that there was neither an express nor an implied agreement by which Elk was to pay for services and material supplied to it by Al Thrasher Lumber Co., Inc. Elk did regularly pay $100 per month for services rendered by the sales manager of the Thrasher corporation. Although these services doubtless were worth more, both corporations obviously agreed upon the long-continued monthly payment. Other items sought by the Thrasher corporation from Elk were never shown or charged on the books of either corporation. Billing of

$52,000 for a 10-month period was made by the Thrasher corporation and paid by Elk after this action was filed. The evidence, although there are conflicts, supports the court's finding that such payment was not contemplated by either when the services were rendered, and that the billing was a mere afterthought designed to reduce or eliminate the value of the corporation in which Mrs. Thrasher had a joint tenancy interest. We find no error.

Nor do we find error in the award requiring payment by appellant to Elk of the sum of $7,100 paid to counsel for appellant. Respondent concedes that fees for services rendered to Elk other than in defense of this action could properly be paid, and appellant does not deny that services rendered in defense of the stockholders derivative action are properly charged to Thrasher, rather than Elk. The evidence purporting to allocate the services fails to establish that the services fell within the classification chargeable to Elk. Counsel's first bill for somewhat more than $5,000 was directed to appellant, and an identical billing was then submitted to Elk. This bill, on its face, covers services rendered in this derivative action. There is no showing that subsequent invoices related to services rendered for the corporation, independently of "defense" of this action.

The award to respondent's counsel of a share of the funds recovered by Elk is proper (*Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 475, 477 [41 P. 328]; *Beyerbach* v. *Juno Oil Co.,* 42 Cal.2d 11, 19-20 [265 P.2d 1]). Nor does the award of costs to respondent wife as an individual defeat this rule. (*Beyerbach* v. *Juno Oil Co., supra,* at p. 20.)

The attack of appellants Thrasher and Al Thrasher Lumber Co., Inc. upon the imposition of sanctions in connection with discovery procedures must fail. Although these respondents were not personally served with the discovery order, their attorney was. Such service is proper (Code Civ. Proc., § 2031, subd. (b)). After this service, counsel for the parties met in the judge's chambers and agreed to allow the discovery. The record indicates that time and place for examination of the corporate records by respondent's counsel were agreed to. Under these circumstances, the decision relied upon by appellants (*Lund* v. *Superior Court,* 61 Cal.2d 698, 712 [39 Cal.Rptr. 891, 394 P.2d 707]) does not apply. The record supports the implied finding that the procrastination and evasive tactics of appellants and their counsel caused additional expenditure of time and money by respondent's counsel and accountant which warrants the amount of the sanctions imposed.

It is doubtful that the order imposing sanctions is separately appealable (*Lund* v. *Superior Court, supra,* 61 Cal.2d 698, 708-709). As to appellants

Thrasher and Al Thrasher Lumber Co., Inc., however, the question is academic. ■ Whether or not that order is separately appealable, it may be reviewed upon appeal from the judgment in which it is incorporated.

As to appellants' counsel, a different question is presented. He is not a party to the action. Thus if the order imposing sanctions is not itself appealable, his appeal should be dismissed. But the effect of such dismissal would be to remit him to his remedy by extraordinary writ. In view of the time elapsed since entry of judgment, appellants' counsel might well be prejudiced in his writ application. The issue has been fully briefed by both counsel, and necessarily reviewed fully by the court insofar as the sanctions apply to appellants. In the interest of time of both counsel and the court, we elect to treat the appeal of appellants' counsel as an application for relief by writ. We find the award against counsel proper, and thus affirm the judgment, if appealable, and in the alternative deny the writ.

Judgment affirmed. Plaintiff to recover costs on appeal.

Brown (H. C.), J., and Caldecott, J., concurred.

Petitions for a rehearing were denied September 1, 1972, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied November 15, 1972.