SNYDER ELECTRIC CO., Appellant,

v.

Robert J. FLEMING, Respondent,

and

ACE MANUFACTURING, INC., Appellant,

v.

FLEMING SHEET METAL CO., et al, Respondents.

No. 51237.

Supreme Court of Minnesota.

May 29, 1981.

Davis & Racette, St. Louis Park, for appellants.

John L. Prueter, Minneapolis, for respondents.

SIMONETT, Justice.

Two creditors of an insolvent corporation sued its sole stockholder and chief officer to recover on their money judgments against the corporation. The trial court ruled in favor of the defendant officer-stockholder. We reverse.

Defendant Robert J. Fleming was the president and sole stockholder of Fleming Sheet Metal Company (Fleming Metals), a heating and ventilating business incorporat-ed in 1965. The stated capital of the corporation was $5,000. No dividends were ever paid and earnings were retained to provide operating capital. Additional operating capital was obtained from Fleming's personal loans to the corporation, corporate debts personally satisfied by Fleming, and declared salary and bonuses Fleming left in the corporation. Initially the corporation prospered, but by 1970 it was showing a loss and in 1973 it became insolvent.

Plaintiff Snyder Electric obtained a judgment against Fleming Metals in January 1977 for $15,500, for supplies and service purchased to June 1973. Plaintiff Ace Manufacturing, Inc., supplied materials to Fleming Metals on open account to October 1974 and, in July 1978, obtained a judgment against the corporation for $17,000. Efforts to collect on the judgments were unsuccessful, so plaintiffs sued Mr. Fleming personally. Plaintiffs asserted three theories of recovery: (1) that certain transactions between Fleming Metals and other creditors were fraudulent conveyances; (2) that Fleming Metals was an "alter ego" of Mr. Fleming and the corporate entity should be disregarded; and (3) that Fleming breached a fiduciary obligation to plaintiffs by favoring himself as a creditor over them. The trial court rejected all three theories.

To understand plaintiffs' claims, the relationship between Fleming Metals, Mr. Fleming, and two other corporations owned by Fleming needs to be considered. In 1969 Fleming acquired the Guy C. French Company, a roofing business, through purchase of all its stock. In 1970 he purchased the Foo Chu Cafe, Inc., with another person whose interest he soon bought out. Financing for these two corporations was the same as for Fleming Metals, that is, rather than sell additional stock, Fleming would advance money through loans, retained salary or payment of corporate debts; and these advances were reflected on an "officer's due" account.

The three businesses shared office space and expenses. Often one corporation would pay salaries or debts of another, provide

services or sell items to another, and pay debts for or receive income due another. These transactions were recorded in "intercompany accounts" and the debts from one corporation to another balanced periodically. Uncontroverted testimony from defendant's accountant established the handling of funds through these "officer's due accounts" and "intercompany accounts" was standard accounting practice.

Like Fleming Metals, the Guy C. French Company became insolvent around 1973. Both corporations continued to operate until 1975, when their tangible assets were sold, and thereafter, both were inactive. Bankruptcy was never filed. Dissolution proceedings never occurred. Fleming Metals' sole remaining assets are some uncollectable accounts receivable.

Fleming's third business, Foo Chu, however, prospered until the cafe was destroyed by fire in late 1979. The assets of Foo Chu—from which plaintiffs seek recovery of their debts—consist of a fire insurance claim and the property site. Another loss of the cafe fire was much of Fleming's business records for his three businesses, and this complicated proof at trial.

1. Appellants first contend the trial court was clearly erroneous in finding there were no fraudulent conveyances here. We disagree.

Minnesota's version of the Uniform Fraudulent Conveyances Act provides that conveyances are a fraud on creditors when made without fair consideration by either an insolvent corporation or a corporation which will thereby be rendered insolvent. So, too, are conveyances made with actual intent to hinder, delay or defraud creditors. See Minn.Stat. §§ 513.20 to 513.32 (1980). "Fair consideration" is fair equivalent exchanged in good faith. Minn.Stat. § 513.22 (1980).

■ Appellants argue that, in finding they failed to prove their case, the trial court allocated the burden of proof to the wrong parties. In this, we partly agree. On their claim that Fleming transferred assets with actual intent to defraud them,

appellants bear the burden of proof, since the statute involved, Minn.Stat. § 513.26 (1980), provides creditors are to be unaided by "intent presumed in law." However, on the claim that conveyances were made by Fleming Sheet Metal Company to Fleming or his two other companies without fair consideration, the onus of proof is not appellants' alone.

■ The aggrieved creditor ordinarily bears the burden of proving a conveyance is fraudulent, but the relationship between the parties to a transaction may shift this burden to varying degrees. Cf. Neubauer v. Cloutier, 265 Minn. 539, 544 n. 4, 122 N.W.2d 623, 628 (1963) ("Transfers between husband and wife are presumptively fraudulent * * *. * * * They are not so considered between parent and child, although scrutinized.") Transactions involving corporations and their executives or corporations under the common control of the same officers and directors are to be regarded with skepticism by the courts and closely scrutinized. See Swanson v. Tomlinson Lumber Mills, Inc., 307 Minn. 180, 190 n.3, 239 N.W.2d 216, 221 (1976). As in all cases of claimed self-dealing or conflict of interest against corporate officers and directors, such transactions are presumptively fraudulent and to overcome this presumption the executive must show by clear proof he acted with impartiality and fairness to the corporation. Savage v. Madelia Farmers' Warehouse Co., 98 Minn. 343, 347, 108 N.W. 296, 298 (1906); 15A W. Fletcher, Cyclopedia of the Law of Private Corporations § 7412 (rev. perm. ed. 1967); W. Knepper, Liability of Corporate Officers and Directors § 2.14 (2d ed. 1973).

■ Here it is evident the trial court did closely scrutinize the challenged transactions, but its findings on their propriety are mixed; for some adequate consideration was found, for others the lack of adequate consideration was deemed unproven. Since appellants are aided by a presumption of lack of consideration for any transaction they can prove occurred between Fleming Sheet Metal Company and Fleming or his other corporations, they need only prove

lack of fair consideration if Fleming produced evidence rebutting that presumption. It is unclear whether the court proceeded with this understanding.

▮ Because the trial judge's findings rested exclusively on business records and undisputed oral testimony concerning them, we need not defer to the trial court's assessments of the evidence and may substitute factual findings of our own on appeal as we deem appropriate. *Fidelity Bank & Trust Co. v. Fitzimons*, 261 N.W.2d 586, 589 (Minn.1977). Perusing the exhibits in this case, we find that those transactions, records of which survived the cafe fire, are adequately supported by consideration and entered in good faith. Therefore, even though Fleming had the burden of proof, that burden was met. Presumptions of fraud on Fleming's part are rebutted and the trial court's dismissal of the fraudulent conveyance claims is affirmed.

▮ 2. Appellants next claim the corporate entity must be disregarded. They argue Fleming Metals was simply an "alter ego" of Mr. Fleming under the doctrine of *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979), and that Mr. Fleming should be personally liable for the corporate debts.

*Victoria Elevator* holds that a person who does not treat his corporation as a separate entity may not hide behind it to avoid personal liability. Whether the corporation is a separate entity or not depends on a number of factors.[1] The trial court carefully considered the evidence in light of these various factors and concluded piercing the corporate veil was not warranted. We agree.

The stated capital of the corporation at all times was $5,000. It appears, however, that total equity (stated capital plus shareholder loans plus retained earnings) kept pace with corporate liabilities until the drastic losses starting in 1970. As the trial court observed, "Any business which fails can probably be said to have been undercapitalized." Available corporate minutes end in 1972. Fleming testified directors' meetings were held annually but the records were lost in the fire. There was no contrary testimony. Dividends were never paid, but this should be no complaint where the sole shareholder put all earnings back into the business. The last items received on open account with the plaintiffs occurred in the fall of 1973, and the proof does not establish to what extent, if any, the debts to plaintiffs were incurred after insolvency. No siphoning of assets occurs if the transactions are for fair consideration, as appears to be the case. Fleming actively functioned as president and director of the corporation. This was a closed corporation and the fact the other two directors—Fleming's wife and his attorney—had a passive role is not inconsistent with this kind of corporation. Corporate tax returns were filed through 1977. A corporate book was maintained, as well as other corporate and bookkeeping records.

Nor can it be said the corporation was a mere facade. Fleming's practice of personally paying some corporate debts, especially when the corporation was financially embarrassed, is not here inconsistent with doing business as a corporation. Moreover, Fleming was reimbursed for these payments either directly or by crediting of his officer's due account. Finally, plaintiffs testified they knew they were dealing with a corporation and it was Robert Fleming's position in the corporation which elicited

---

1. Factors considered significant in the determination include: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely a facade for individual dealings.

Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness.
*Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn.1979) (citations omitted). *See also DeWitt Truck Brokers, Inc. v. W. Ray Flenning Fruit Co.*, 540 F.2d 681 (4th Cir. 1976).

their confidence. Fleming, too, ends up as a creditor of the corporation with $13,000 still due him. We agree with the trial court that under *Victoria Elevator* there is no cause to ignore the corporate entity of Fleming Metals.

3. Finally, appellants contend Mr. Fleming breached a fiduciary duty by favoring himself over other creditors. We believe that this contention has merit.

 Directors and officers may make loans to their corporations and they may use the same methods as other creditors to collect bona fide corporate debts owed to them, but only so long as the corporation is solvent. When a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors. *Farmers Co-operative Assn. of Bertha v. Kotz*, 222 Minn. 153, 23 N.W.2d 576 (1946). As fiduciaries, they cannot by reason of their special position treat themselves to a preference over other creditors. *Id.; Swanson v. Tomlinson Lumber Mills, Inc.*, 307 Minn. 180, 239 N.W.2d 216 (1976); *Taylor v. Fanning*, 87 Minn. 52, 91 N.W. 269 (1902). By "preference" we here mean generally a transfer or encumbrance of corporate assets made while the corporation is insolvent or verges on insolvency, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests.

 An insolvent corporation may assign, convey or encumber property if necessary to secure loans from officers and directors, where the proceeds are used in good faith to pay debts and the security is given contemporaneously with the loan. No preference is thereby created. *Stumbo v. Paul B. Hult Lumber Co.*, 251 Or. 20, 444 P.2d 564, 573 (1968). Fletcher, *supra*, § 7429. Nor is insolvency a bar to reimbursing corporate executives for personally paying current corporate debts. *Savage v. Madelia Farmers' Warehouse Co.*, 98 Minn. 343, 108 N.W. 296 (1906).

 On the other hand, payment or grant of security by an *insolvent* corporation to its officers and directors for *antecedent* debts to them is an invalid preference. *Smith v. Mississippi Livestock Producers Assn.*, 188 So.2d 758, 764–765 (Miss. 1966). Similarly, it is an impermissible preference for an insolvent corporation's officers or directors to seek exoneration of corporate debts on which they are secondarily liable to the prejudice of other creditors. Fletcher, *supra*, § 7476 and cases cited thereunder at note 42.

 In all cases, the burden is on the corporate executives to show a payment received was made in good faith and was not a preference. Fletcher, *supra*, § 7602; *accord, Smith v. Mississippi Livestock Producers Assn.*, 188 So.2d at 764 (burden of proof is on corporate director or shareholder to show good faith and fairness of any transaction with the corporation); *Thrasher v. Thrasher*, 27 Cal.App.3d 23, 26, 103 Cal. Rptr. 618, 620 (1972).

 As we view the record and as the trial court also noted, it is evident Fleming breached his fiduciary duty to creditors on several occasions after 1973. On one occasion, the trial court observed, Fleming took an assignment of accounts receivable from Fleming Metals in payment for previous "wages due officer and note due officer," and, again, when the assets of Fleming Metals were sold in 1975, the proceeds were applied to a note which Robert Fleming had signed personally. Additionally, there are other transactions which require explanation if the burden of proving absence of a preference is placed, as it should be, on Fleming. It should be kept in mind that the claim here does not seek to pierce the corporate veil. It is not claimed the transfers had inadequate consideration or that they were motivated by fraudulent intent. The claim is that the transfers are impermissible preferences.

Notwithstanding these circumstances, the trial court ruled appellants lacked capacity to challenge Fleming because they were suing as individual creditors. The trial court noted that in the two Minnesota cases

holding directors liable for breach of fiduciary duties to creditors, the plaintiffs were receivers, not the creditors themselves. *See Swanson v. Tomlinson Lumber Mills; Taylor v. Fanning.*

■ May appellants sue directly? Yes. Statutory remedies for corporate creditors (other than for fraudulent conveyances) are set forth in Minn.Stat. ch. 316 (1980). As part of dissolution proceedings, the court appoints a receiver who, in due course, satisfies all creditors ratably. Under the trial court's ruling, this is the only recourse for creditors seeking to recover funds lost through breach of a corporate officer's fiduciary duty. Yet chapter 316 also provides in section 316.03 that:

> In any case affecting a corporation the district court may:

> \* \* \* \* \* \*

> (2) Compel any such officer to pay to such corporation or to its representative all funds, and the value of all property acquired and held, or transferred to others, or lost, wasted, or damaged in violation of official duty;

> \* \* \* \* \* \*

> (6) Set aside any unauthorized or unlawful alienation of property made by any officer thereof whenever satisfied that the alienee knew or had reasonable cause to believe that such conveyance was unauthorized or illegal.

(Emphasis added.) The powers granted district courts in section 316.03 are not limited to dissolution proceedings nor dependent on the complaint of a receiver; rather, these powers can be invoked "in any case affecting a corporation." This is such a case.

But once a court compels an officer to return assets to the corporation on the complaint of creditors, are those creditors then relegated to suing for dissolution and a receivership before their claims may be satisfied? We think not. An early case, *Minneapolis Paper Co. v. Swinburne Printing Co.*, 66 Minn. 378, 69 N.W. 144 (1896), construing the predecessor of chapter 316 (General Statutes 1878, chapter 76), comments that involuntary dissolution and appointment of a receiver is appropriate only where there are yet corporate assets to be sequestered and divided among judgment creditors.

> But where there are no corporate assets which can be the subject of sequestration in the action, and hence the only relief sought or obtainable is the enforcement of the stockholder's liability, an action for that purpose may be instituted by a simple contract creditor.

66 Minn. at 382, 69 N.W. at 146.[2] And, in *Taylor v. Fanning,* where the suit was by a receiver, the court quoted from *Taylor v. Mitchell,* 80 Minn. 492, 83 N.W. 418 (1900), that directors of an insolvent corporation cannot deal with themselves to the injury of other creditors, for "[i]f they do, *equity* will set aside the transaction, *at the suit of creditors of the corporation* or their representatives \* \* \*." 87 Minn. at 53, 91 N.W. at 270 (emphasis added).

■ There is thus no legal requirement that appellants pursue their claim through a receiver. Indeed, even in dissolution proceedings, the decision to appoint a receiver is left to the discretion of the district court, *see* Minn.Stat. § 301.51 (1980), and that decision is an equitable matter not to be made perfunctorily. As we have recognized, "[t]he appointment of a receiver is a very drastic proceeding, 'usually very expensive and frequently absorbing the greater part of the estate.' It is 'harsh, severe, drastic, heroic, and costly.'" *Asleson v. Allison,* 188 Minn. 496, 500, 247 N.W. 579, 580 (1933) (citations omitted). It is a step to be

---

2. In *Swinburne,* the creditor sued "in behalf of himself and all other creditors." The action there, as here, was in the nature of a creditor's bill, on which a pleading of that form was then commonly submitted. When a suit is brought for unnamed creditors, those creditors might join in the benefits of a resulting judgment, avoiding a multiplicity of suits. Such a pleading is not mandatory. As a general rule, a creditor can file and maintain a creditor's bill without reference to other creditors similarly situated. 5A Dunnell Minn. Digest, *Creditor's Suit* § 2405 (3d ed. 1971); 21 Am.Jur.2d, *Creditors' Bills* §§ 69–70 (1965). *Accord, Patterson v. Stewart,* 41 Minn. 84, 42 N.W. 926 (1889).

taken when required to accomplish complete justice for the parties before the court. *Id.* Here there are no assets for a receiver to sequester, no interests for him to liquidate. Only three creditors of the debtor corporation with any significant claims remain, the two appellants and Robert Fleming. We see no reason in equity to require appellants sue as a class or institute a receivership; we hold the merits of their claim for breach of a fiduciary obligation can be heard in this suit.[3]

To establish their case, appellants must prove what transactions occurred between an insolvent Fleming Sheet Metal Company and Fleming or his other two companies. The onus then passes to Fleming to prove these transactions did not constitue preferences. All transactions which eventually are shown to be preferences must then be reversed and the assets so transferred be considered as if returned to Fleming Sheet Metal Company. Since such transfers were originally for fair consideration, their flaw being their operation as preferences, all assets so returned will cause the corresponding corporate debts to Robert Fleming to be resurrected.

The task will then arise for the trial court to redistribute the assets of Fleming Sheet Metal Company among its three creditors, appellants and Robert Fleming. Appellants have argued a director must satisfy an insolvent corporation's creditors ratably. We agree to the extent that our holding requires a director limit recovery of his own debts to a pro rata share. However, since this is not a proceeding in bankruptcy nor a corporate dissolution, the trial court is not obligated to so divide the assets. It may become evident that, once it reacquires all assets lost through preferences to Robert Fleming, Fleming Sheet Metal Company's debt to Robert Fleming will be so large that a pro rata division of its assets will result in a nominal recovery by appellants. This result should not be forced upon the trial court, nor upon appellants, who have prayed for an equitable remedy. We therefore leave to the trial court the decision not only of how to proceed, that is, whether by a new trial or by taking additional testimony and amending its findings and conclusions, but also of how to fairly distribute the assets of the debtor here.

Appellants' other claims need not be reached, but we do observe that their motion for mistrial was entirely without merit.

Reversed and remanded for proceedings consistent with this opinion.

---

3. It should be kept in mind this suit is by general creditors against Mr. Fleming for breach of his fiduciary duty in transferring corporate assets to himself in payment of a pre-existing debt. This is unlike the situation where the general creditors sue the debtor (here, the corporation) for an improper preference of another general creditor, such as in *Johnson v. O'Brien*, 275 Minn. 28, 31, 144 N.W.2d 720, 721–22 (1966). Plaintiffs' cause of action here is not against the debtor but against its officer for breach of his fiduciary duty to them as creditors. Further, even in an action such as this, the district court can protect other creditors of the debtor by ruling they be joined as necessary parties or by appointing a receiver and ordering the debtor's assets sequestered, if and when, in its discretion, such measures are advisable.