**H–W–H CATTLE COMPANY, INC., Appellant,**

v.

**Clayton SCHROEDER, Appellee.**

No. 84–2017.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1985.

Decided July 5, 1985.

Ben L. Krage, Dallas, Tex., for appellant.

Warren L. Bush, Wall Lake, Iowa, for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

This is a breach of contract action before the Court on diversity jurisdiction. H–W–H Cattle Co. (HWH) appeals from the district court's judgment, contending that it erred in failing to award HWH greater damages. For the reasons set forth below, we affirm.

## I.

HWH was an order-buying cattle company which purchased cattle on commission for feedlots.[1] As an order-buyer, HWH did not own any feedlots itself. HWH is owned by the Hitch family, which owns various cattle businesses, including several feedlots. On September 13, 1978, HWH entered into a contract with Clayton Schroeder to purchase 2,000 steers for $67.00 per hundredweight ($0.67 per

pound). The contract specified that the cattle would be delivered between March 1, and May 31, 1979, in Artesia, New Mexico. HWH gave Schroeder a $50,000 downpayment for the cattle. HWH in turn had a contract with its customer, Western Trio Cattle Co. (Western Trio), to sell it 2,000 head of cattle of the same description for $67.35 per hundredweight. Western Trio had given HWH a $50,000 downpayment which it had used to pay Schroeder.

Schroeder was only able to deliver 1,397 cattle to HWH, leaving it 603 head short of fulfilling its contract. As a result, HWH filed an action for breach of contract against Schroeder in federal district court for the Northern District of Iowa.[2] The matter came to trial before the district court without a jury on April 15–16, 1982. The district court found that Schroeder breached its contract with HWH by failing to deliver 603 head of cattle. The court awarded to HWH $15,075, the remaining amount of HWH's downpayment which Schroeder had retained, and $1,371.83 in damages for HWH's lost commission on the 603 cattle not delivered. HWH now brings this appeal.

## II.

The parties agree that the dispute is governed by the Uniform Commercial Code as adopted in Iowa, and that the only issue before the Court is the proper measure of damages. Section 554.2711(1) provides that a buyer has two options when the seller fails to deliver; the buyer may:

(a) "cover" and have damages under the next section [§ 554.2712] as to all the goods affected whether or not they have been identified to the contract; or

(b) recover damages for nondelivery as provided in this Article (§ 554.2713).

Iowa Code Ann. § 554.2711(1) (West 1967).

Schroeder contends in his brief that HWH exercised the first option by purchas-

1. Although still an existing corporation, HWH was no longer actively engaged in business at the time of trial. HWH has been consolidated with all of the cattle-buying firms owned by the Hitch family.

2. Schroeder filed a third-party complaint against several other cattle firms, one of which in turn filed a fourth-party action against Schroeder's agent, C.A. Heldridge. The district court separated these actions from the trial between HWH and Schroeder, and they are not relevant to this appeal.

ing replacement cattle in June, 1979. Section 554.2712 provides:

> (1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
>
> (2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (§ 554.2715), but less expenses saved in consequence of the seller's breach.
>
> (3) Failure of the buyer to effect cover within this section does not bar him from any other remedy.

Iowa Code Ann. § 554.2712 (West 1967). Although the district court did not make any findings concerning whether or not HWH effected cover, it is clear from the record that HWH did not do so. HWH's buyer, Gene McGlaun, testified at trial that he was in Dodge City, Kansas in June, 1979, and that he telephoned C.A. Heldridge, Schroeder's agent, to let him know that substitute cattle were available which could be purchased to fulfill the contract with a freight adjustment of roughly $0.50 per hundredweight over the contract price. According to McGlaun, Heldridge responded that such an offer sounded like a good deal and that he would call him back with a reply; Heldridge never called back. McGlaun further testified that he bought 120–130 head of cattle in Dodge City on that day, but it is clear that these 120 cattle were not to cover for the 603 cattle which were not delivered under the contract with Schroeder. McGlaun stated that his purchases were for other customers, and that "each set of cattle stood on their own to fill individual customers' needs." Schroeder introduced no evidence to contradict this testimony.

We conclude from this testimony and from other testimony by McGlaun concerning the nature of HWH's order-buying operation that any cattle McGlaun purchased in Dodge City were not substitute cattle to fulfill the contract with Schroeder. We thus reject Schroeder's contention that HWH elected to cover and thereby limit its damages under § 554.2712.

HWH contends that it is entitled to damages under the second option, § 554.2713, which provides:

> (1) Subject to the provisions of this Article with respect to proof of market price (§ 554.2723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this Article (§ 554.2715), but less expenses saved in consequence of the seller's breach.
>
> (2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

Iowa Code Ann. § 554.2713 (West 1967).

HWH contended before the district court, as it does here, that it is entitled to damages based upon the market price of cattle meeting the contract description in Artesia, New Mexico on June 1, 1979, the day after the last day of delivery under the contract. The district court rejected this argument because it concluded that it would result in an undeserved windfall to HWH, as HWH had already voluntarily limited its "market price" by agreeing to sell these cattle to Western Trio for $0.35 per hundredweight more than it paid for the cattle. The district court also found that the parties modified the time for delivery, in that HWH indicated it would have accepted delivery through the summer of 1979. During this time, the price of cattle fell back to around $67.00 per hundredweight.

■ We conclude that the district court did not err in so holding. To adopt HWH's position in this case would result in granting it a windfall, and thus violate the general principle concerning remedies underlying Article Two of the Uniform Commercial

Code in Iowa Code Ann. § 554.1106, which provides:

> (1) The remedies provided by this Chapter shall be liberally administered to the end that *the aggrieved party may be put in as good a position as if the other party had fully performed* but neither consequential nor special nor penal damages may be had except as specifically provided in this Chapter or by other rule of law. (Emphasis added.)

We read this admonition from the Code to suggest that a court should look through the form of a transaction to its substance when necessary to fulfill the parties' expectations expressed in the contract. This is precisely what the district court did in this case, by limiting the damage award to HWH to its expectancy interest and thereby avoiding a windfall of some $62,000. *See also Coast Trading Co. v. Cudahy Co.,* 592 F.2d 1074, 1083 (9th Cir.1979).

It is clear from McGlaun's testimony that HWH only purchased cattle to meet a specific customer's needs. As an order-buyer, it thus never expected to receive more than its $0.35 commission on any transaction, including its order purchase for Western Trio. HWH argues that it should receive market-price damages because it is liable to Western Trio for its failure to deliver the 603 cattle, and that Western Trio's damages would be measured by the difference between the market price on June 1, 1979, and the contract price. The district court properly rejected this contention, noting that Western Trio had made no demand on HWH to fulfill the remainder of the contract. The evidence at trial indicated that Western Trio would have, at best, only broken even on the resale of cattle delivered under the contract due to the fallen cattle market in the autumn of 1979. Moreover, McGlaun testified that Western Trio is managed by the Hitch family, which also owns HWH. We thus view Western Trio's failure to sue HWH as an equitable consideration in support of the district court's judgment.

HWH also contends that the district court's decision is contrary to *Cargill, Inc.*

*v. Fickbohm,* 252 N.W.2d 739 (Iowa 1977). In *Cargill,* the seller failed to deliver 10,000 bushels of corn to the plaintiff. The contract price was $1.26 per bushel; the Iowa Supreme Court concluded that it was permissible for the plaintiff to receive damages based on the market price on the date it learned of the breach of $2.45 per bushel even though the plaintiff had hedged its purchase by selling 10,000 bushels on the futures exchange at $1.39 per bushel. *Id.* at 743. The instant case is distinguishable from *Cargill* in that Cargill had made the independent decision to hedge its purchase on the futures exchange, thereby contracting with a party unrelated to the transaction with the defendant seller. Here HWH entered into a contract with Schroeder solely to meet the needs of Western Trio, a related company, and as an order-buyer, it never stood to gain more than its $0.35 commission.

Because we affirm the district court's judgment on the basis of restricting its recovery to its expectancy interest in lost commission, we find it unnecessary to review whether the parties modified the delivery date of the contract.

Affirmed.