NHF HOG MARKETING,
INC., Appellant,

v.

PORK–MARTIN, LLP, Respondent.

No. A11–1137.

Court of Appeals of Minnesota.

Jan. 3, 2012.

Review Denied March 20, 2012.

Jeffrey A. Peterson, Gray Plant Mooty, P.A., St. Cloud, MN, for appellant.

Matthew T. Nielsen, Krahmer & Nielsen, P.A., Fairmont, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; HUDSON, Judge; and CONNOLLY, Judge.

## OPINION

PETERSON, Judge.

In this appeal from a judgment for breach-of-contract damages awarded after respondent breached the parties' contract by failing to deliver hogs, appellant argues that (1) the district court erred when it held that appellant is entitled only to its lost commission on the resale of the hogs; and (2) under Minn.Stat. § 336.2–713 (2010), appellant is entitled to damages for the difference between the contract price and the market price at the time the hogs were to be delivered. We affirm.

## FACTS

Appellant NHF Hog Marketing Inc. is a hog-marketing business, and respondent Pork–Martin LLP is a business that owns and finishes hogs. In November 2005, appellant entered into a master hog-procurement contract (master contract) with third-party J.B.S. Swift, under which appellant agreed to deliver approximately 750,000 hogs to Swift each year from January 2006 through December 2010. The master contract required that the hogs come from designated production facilities specified in the contract and that the hogs meet specified quality requirements. The contract provided that appellant would be paid a base price equal to market price, subject to adjustments if the market price per carcass hundred weight fluctuated above or below a specified range. To meet the requirements of the master contract, appellant entered into contracts with operators of designated production facilities, including respondent.

In January 2006, appellant and respondent entered into a hog-procurement contract, under which respondent agreed to deliver 2,333 market-weight hogs per month to appellant. The price terms of the hog-procurement contract and the master contract were the same, except that respondent was paid $0.33 less per carcass hundred weight than appellant received from Swift. The $0.33 difference between the price that appellant paid respondent and the price that appellant received from Swift was appellant's commission for negotiating and coordinating respondent's delivery of hogs to Swift. In May 2008, the market price for hogs increased, and respondent stopped delivering hogs under the hog-procurement contract and sold its hogs to another buyer.

Appellant brought this breach-of-contract action against respondent, seeking damages equal to the difference between the hog-procurement-contract price and the market price at the time the hogs were to have been delivered to Swift. Appellant sought total damages of $439,844.95. Of this amount, $396,647.45 was for damages incurred by Swift under the master contract due to respondent's failure to deliver hogs. This amount is the difference between the market price on the day the hogs were to be delivered to Swift and the sale price under the master contract; it is the additional amount that Swift would have had to pay to buy hogs when respondent failed to deliver. The remaining $43,197.50 in damages sought was for the commission that appellant lost when respondent failed to deliver and no sale occurred.

The case was tried to the court. At the time of trial, Swift had not started any action against appellant to enforce the terms of the master contract, and appellant presented no evidence indicating that Swift was likely to insist on performance. The district court awarded appellant $43,197.50 in damages. This appeal followed.

## ISSUE

Did the district court err in limiting appellant's damages to its lost commission?

## ANALYSIS

■ This court reviews issues of statutory construction de novo. *Pawn Am. Minn., LLC v. City of St. Louis Park*, 787 N.W.2d 565, 570 (Minn.2010). Uniform laws are interpreted "to effect their general purpose to make uniform the laws of those states which enact them." Minn. Stat. § 645.22 (2010). Accordingly, "we give great weight to other states' interpretations of a uniform law." *Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn.2002).

■ Appellant argues that, under the Uniform Commercial Code (U.C.C.), in addition to its lost commission, it is entitled to damages in the amount of the difference between the master-contract price and the market price at the time respondent failed to deliver the hogs. The U.C.C. states:

(1) Subject to the provisions of this article with respect to proof of market price (section 336.2–723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (section 336.2–715), but less expenses saved in consequence of the seller's breach.

(2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

Minn.Stat. § 336.2–713 (2010).

Minnesota's appellate courts have not addressed whether a buyer is entitled to market-differential damages under this statute when those damages exceed actual damages. Courts in other jurisdictions are divided on the issue. *See Allied Canners & Packers, Inc. v. Victor Packing Co.,* 162 Cal.App.3d 905, 912, 209 Cal.Rptr. 60 (1984) (noting division). One view is that U.C.C. § 2–713, codified in Minnesota as section 336.2–713, is a statutory liquidated-damages provision and, therefore, damages should not be limited to a plaintiff's actual economic loss. *Id.* at 914, 209 Cal. Rptr. 60.

The other view, which is urged by respondent, is that a buyer's damages should be limited to actual damages. This view is consistent with the U.C.C. policy that

remedies provided by the Uniform Commercial Code must be liberally administered to the end that the aggrieved par-

ty may be put in as good a position as if the other party had fully performed but neither consequential or special damages nor penal damages may be had except as specifically provided in the Uniform Commercial Code or by other rule of law.

Minn.Stat. § 336.1–305 (2010).

Respondent's position was adopted in *H–W–H Cattle Co. v. Schroeder,* 767 F.2d 437 (8th Cir.1985). In *H–W–H,* the buyer contracted to buy cattle from the seller and resell them to a third party. *H–W–H,* 767 F.2d at 438. The market price of cattle increased, the seller breached the contract, and the buyer sought damages under U.C.C. § 2–713 as codified in Iowa, and corresponding to Minn.Stat. § 336.2–713. *Id.* at 439. The United States Court of Appeals for the Eighth Circuit upheld the district court's award of lost-profits damages, stating that adopting the buyer's position would result in a windfall to the buyer and violate the general principle of remedies underlying the statutory provision corresponding to Minn.Stat. § 336.1–305. *Id.; accord Allied,* 162 Cal.App.3d 905, 209 Cal.Rptr. 60.

Appellant argues that *H–W–H* is distinguishable because the issue in *H–W–H* was whether the parties modified the contract to allow for a later delivery date. In *H–W–H,* the price of cattle increased during the spring and then fell to the contract price during the fall. 767 F.2d at 438–440. Although the district court found that the parties modified the contract to allow for a later delivery date, the Eighth Circuit did not address that issue. The court stated, "Because we affirm the district court's judgment on the basis of restricting its recovery to its expectancy interest in lost commission, we find it unnecessary to review whether the parties modified the delivery date of the contract." *Id.* at 440.

The position taken by *H–W–H* and *Allied* is favored by commentators James J. White and Robert S. Summers. After noting that the *Allied* court "relied substantially" on the policy of U.C.C. section 1–305,[1] White and Summers state:

Courts should take care to apply the *Allied* and *H–W–H* limitation narrowly. First, it should be applied only when the defendant proves that the plaintiff's expected resale profit was less than the 2–713 differential; we would not impose the burden of proving the negative on the plaintiff as part of its case in chief. Second, in any case in which the buyer's resale purchaser will likely insist upon performance, the buyer's damages should not be limited to the buyer's expected resale profit, for in that case the buyer will be liable in damages to its own purchaser equal to the difference between the buyer's resale contract price and the market price (or will have to cover at market price in order to make delivery).

. . . .

. . . We recognize that the prospect of a reduction in damages may have some impact upon a seller's willingness to perform, and may make the security of a buyer's expectations somewhat smaller than would otherwise be the case. Arguably, too, our position will unjustly enrich an occasional seller and may also make the trial more complicated. Even so, we think our overall position is more faithful to the idea that the contract plaintiff should recover only his lost expectancy. That idea is deeply entrenched in Anglo–American common law and is adopted in section 1–305 of Revised Article One and its predecessor section 1–106 of the Uniform Commercial Code. Limiting the plaintiff to expectation damages also preserves the possibility of what economists call efficient breach, an idea endorsed by one of your authors.

1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 6–4, at 413–14 (5th ed.2006).

We are persuaded that the position adopted in *H–W–H* and *Allied* and favored by White and Summers is the better approach. The damages awarded by the district court put appellant in as good a position as if respondent had fully performed. We, therefore, hold that a buyer's damages under Minn.Stat. § 336.2–713 are limited to the buyer's actual damages when the breaching seller shows that the buyer's expected resale profit was less than market-differential damages and the buyer fails to show a likelihood that the resale purchaser will enforce the resale contract.

### DECISION

Because appellant's actual damages were limited to its lost commission and there was no showing of a likelihood of enforcement of the master contract, the district court properly awarded appellant damages of $43,197.50 for its lost commission.

**Affirmed.**

---

1. U.C.C. section 1–106 was the predecessor to     section 1–305.